**Billy Junior JARRETT, Appellant.**

v.

**UNITED STATES of America,**
Appellee,

No. 19686.

United States Court of Appeals,
Eighth Circuit.
March 16, 1970.

Billy Junior Jarrett, pro se.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, and Claude H. Freeman and Richard J. Barry, Asst. U. S. Attys., for appellee.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

Once again we are confronted with a post-conviction application for relief from a federal sentence imposed after a plea of guilty entered more than a decade ago.

Billy Junior Jarrett, an inmate of Leavenworth, appeals in forma pauperis from the district court's denial of his motion filed pursuant to 28 U.S.C. § 2255. He seeks to vacate and set aside his 1956 sentence pronounced upon his plea of guilty. Judge Hanson appointed counsel to represent Jarrett. A full hearing was held. Jarrett testified and briefs were submitted.

The chronology as revealed by the files and the evidence at the hearing on the motion is pertinent:

1. On December 31, 1955, a federally insured bank at Salem, Iowa, was robbed.

2. On June 5, 1956, Jarrett was arrested in Iowa by a local sheriff and charged with the state crime of forgery. At the time of his arrest Jarrett had in his possession an automobile and a gun. At that time Jarrett, as his brief recites, "knew the car in his possession was stolen from another state and the gun had been taken in a burglary in which several checks had been taken and cashed in different states."

3. On the afternoon of June 7 FBI Special Agents Bugas and Foster, both of whom were experienced, interviewed Jarrett in the County Court House at Glenwood, Iowa. At that time Jarrett was still in state custody. As to the preliminary aspect of this interview, Agent Bugas testified as set forth in the margin.[1] Agent Foster testified to the

1. "Q. Did you have any discussion with him concerning any of his rights?

"A. Prior to any questions other than the fact to determine whether he was receptive, we advised him of certain rights that he had. After establishing our identification, exhibiting it, we explained certain rights to Mr. Jarrett.

"Q. Can you tell us, Mr. Bugas, as to the best of your recollection what you told Mr. Jarrett as to his rights?

"A. We advised Mr. Jarrett prior to posing any questions that he had the right to not answer; he had the right to consult a lawyer; should he furnish any information, the information might be used against him in court.

"Q. Do you remember whether or not anything was said by Mr. Jarrett regarding counsel?

"A. No.

same effect. The interview went on for about four hours while four written statements were taken from Jarrett. These concerned, respectively, four separate crimes, namely, the Salem bank robbery, two Dyer Act offenses, and the possession of the gun. As to all this, Agent Bugas further testified as is set forth in the margin.[2] Agent Foster, too, testified to the same effect. Neither Bugas nor Foster interviewed Jarrett after June 7.

4. On June 8 Agent Bugas signed a complaint charging Jarrett with the robbery of the Salem bank in violation of 18 U.S.C. § 2113.

5. On June 12 Jarrett was released from state custody to the custody of the United States Marshal. He was taken that day before a United States Commissioner. Bond was fixed at $25,000. Jarrett was unable to post this.

6. On June 20 Jarrett was interviewed by FBI Special Agent Meadows. The record, however, does not disclose what took place at this interview.

7. On July 2 Jarrett appeared without a lawyer before Judge Graven. The United States was represented by United States Attorney Roy L. Stephenson (now Chief Judge of the United States District Court for the Southern District of Iowa). Jarrett waived indictment and consented in writing in open court to prosecution by information. Rule 7(b), Fed.R.Crim.P. The information signed and then filed by the United States Attorney charged that Jarrett robbed the Salem bank on December 31, 1955, and placed the lives of named persons in jeopardy with the use of a .38 caliber revolver, in violation of 18 U.S.C. § 2113. Jarrett had already consented to a Rule 20 transfer of a charge pending upon indictment in the Northern District of Indiana for a violation of 18 U.S.C. § 2314 (knowing transportation in interstate commerce of a falsely made and forged security). The defendant entered a plea of guilty to each charge. We set forth in the margin the comments which passed between Jarrett, the United States Attorney, and the court at this hearing on July 2, 1956.[3]

---

"Q. In the event that a person being interviewed indicated some question concerning his rights to counsel, did you have a particular procedure that was followed by agents of the Federal Bureau of Investigation?

"A. We have a very positive procedure in that if a person is approached as we did Mr. Jarrett and he seemed hesitant, we would be very emphatic about his right to counsel and if there was any reason at all to believe that he was hesitant, we would terminate the interview and there would be nothing further done in this connection, nothing whatsoever."

2. "Q. Now, throughout the time that you were discussing these subjects with Mr. Jarrett and taking the written statements from him, was he cooperative?

"A. Yes, sir.

"Q. Did he ever give you any indication of hesitance or reluctance to talk with you?

"A. I have no recollection of any objection or reluctance.

"Q. Was he forthright with you in describing the events you asked him about?

"A. Yes.

"Q. To the best of your ability to judge?

"A. Yes."

3. "MR. STEPHENSON: *May it please the Court. In this matter of the United States of America vs. Billy Junior Jarrett, the complaint filed in Council Bluffs June 12, 1956 charges the defendant with violation of Section 2113 of Title 18, Bank Robbery, with bond having been fixed at $25,000, which he was unable to post. I have advised the defendant of the serious nature of the charge pending against him, the charge being bank robbery with aggravation, and advised him of the maximum penalty under the statute of $10,000 fine or imprisonment of 25 years or both. I have advised him of his right to counsel and that if he was without funds for employment of counsel, this Court would appoint counsel for him. He has indicated to me a desire to not have counsel appointed, and to waive indictment in this matter.*

8. On July 3 Judge Graven adjudged Jarrett guilty on both charges. He imposed a sentence of 15 years on the bank robbery charge and one of 3 years on the transportation charge; the latter sentence was to run concurrently with the former. We set forth in the margin excerpts from the transcript of July 3.[4]

"THE COURT: Mr. Jarrett, will you stand up.

"(The defendant arose).

"THE COURT: Mr. Jarrett, you are informed that if you do not have funds to employ an attorney, that the Court will appoint an attorney for you without cost. That is your constitutional right. You are not subject to any criticism for asking that you be afforded that right, and you have heard the nature of the charges. The charges are serious. The penalties are very substantial. I will ask you, do you wish the Court to appoint an attorney for you?

"DEFENDANT JARRETT: No, I don't.

"THE COURT: You understand, and you are informed, Mr. Jarrett, that you have a right to insist that any proceedings against you be instituted by grand jury indictment, but that if you wish, you may waive the grand jury indictment and be proceeded against by Information, and if it is your desire to do so, it is necessary that you sign a consent in open court to do so.

"You may proceed, Mr. Stephenson.

"MR. STEPHENSON: Mr. Jarrett, do you desire to waive indictment?

"DEFENDANT JARRETT: I waive indictment.

 \* \* \* \* \*

"MR. STEPHENSON: May it please the Court. At the time that the Information which has now been filed was discussed with the defendant he requested and stated that he would like to dispose of charges that might be outstanding from other districts and on which detainers had been filed. I advised him at that time that there was a detainer that had been filed involving an indictment which had been returned in the District Court of Northern Indiana, South Bend Division, by the grand jury, charging him with violation of Section 2314, Title 18, involving interstate transportation of a falsely made and forged security. I advised him that under this charge the maximum penalty included a fine of $10,000 and ten years' imprisonment or both. I advised him similarly with respect to this charge if he desired legal counsel and was without funds this Court would appoint counsel for him. This is an indictment, and he has expressed the desire under Rule 20 that this case be transferred to this court and that he be arraigned on the charge before Your Honor and sentence imposed.

"THE COURT: You understand, Mr. Jarrett, that your rights are the same as in this case, that you have the right to have an attorney appointed for you by the Court?

"DEFENDANT JARRETT: Yes, sir.

"THE COURT: Do you wish one appointed on this charge?

"DEFENDANT JARRETT: No.

"THE COURT: All right, you may proceed, Mr. Stephenson.

"MR. STEPHENSON: The defendant having executed a consent and the same having been filed, this matter is on file with the Court.

"Now, as to the bank robbery charge, Billy Junior Jarrett, being a violation of Title 18, Section 2113, how do you plead to the Information that has been filed?

"DEFENDANT JARRETT: Guilty.

"THE COURT: You are informed, Mr. Jarrett, that no one has any authority to speak for the Court as to what your sentence might be. If anyone has attempted to give you any assurance or promise what your sentence might be, the Court would not let your plea stand and would ask that you withdraw the plea. I ask you, has anyone attempted to assure you or promise or hold out to you what your sentence might be in the event you pleaded guilty?

"DEFENDANT JARRETT: No.

"THE COURT: Proceed with the next charge.

"MR. STEPHENSON: In the matter of Criminal No. 2–103—that is the South Bend criminal number—being violation of Title 18, Section 2314, interstate transportation of a falsely made and forged security, I ask you, Billy Junior Jarrett, how do you plead?

"DEFENDANT JARRETT: Guilty.

"THE COURT: I ask you, Mr. Jarrett, has anybody promised or attempted to promise you or hold out to you what your sentence might be in the event you pleaded guilty to this charge?

"DEFENDANT JARRETT: No."

4. "THE COURT: I think at this time because there has been an interval between the plea and the sentence that, Mr. Jarrett, you are again advised of your right to be represented by counsel at all stages of the proceeding, and I ask you again, do you wish to be represented by an attor-

Judge Hanson's unreported memorandum-order denying Jarrett's § 2255 motion recites that the judgment of conviction carried with it the presumption of regularity; that Jarrett's testimony at the hearing "regarding the circumstances under which the confession was made differs very little from the testimony of two F.B.I. agents to whom it was given"; that the court cannot agree with Jarrett that the agent's informing him "of possible sentences constituted a threat which in any way tended to make his confession involuntary"; that Jarrett testified that he was ill at the time of the arrest and thereafter through the time of sentencing and that this prevented him from making a voluntary confession and induced him to enter an involuntary plea of guilty; that the evidence, however, shows that he was examined in a hospital and the examination disclosed that he was suffering "from a mild respiratory disorder"; that the only evidence that his physical condition affected his ability to protect himself was his own testimony; that the standards for in-custody interrogation in 1956 were less restrictive than those established by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which is prospective in application; that the failure to advise Jarrett of any right to have counsel present at the interrogation is not a sufficient ground by itself to regard the confession as involuntary and no other circumstances are shown which tend to make it so; that there is nothing in the record to substantiate Jarrett's allegations that threats and promises were made by the United States Attorney; that the United States Attorney testified that he took care to explain the charges against Jarrett and made no threats or promises of any kind; and that

"* * * Considering the record as a whole, the Court believes that the confession was voluntarily made during a short interrogation involving no threats or coercion.

\* \* \* \* \* \*

"The entire record of this case indicates that the conviction is based on a voluntary plea of guilty entered after a voluntary confession and waiver of counsel. The sentencing Court committed no error in relying on the confession at the time of sentencing."

Jarrett, in a substantial, well-written, and purportedly pro se brief now asserts (1) that his confession was involuntary because he did not have the assistance of counsel prior to the confession; (2) that the district court's determination that the petitioner waived appointment of counsel was in violation of Rule 44, Fed. R.Crim.P.; and (3) that his guilty plea should be set aside because it was accepted in violation of Rule 11, Fed.R.Crim. P.

1. The voluntary or involuntary character of the confession. Jarrett's involuntariness argument is based on the established facts that at the time of his

ney this morning, appointed by the Court?

"DEFENDANT JARRETT: No.

"THE COURT: You may proceed.

"MR. STEPHENSON: May it please the Court. The matter of Criminal 2–461, wherein the defendant is charged with violation of Title 18, Section 2113, commonly known as the bank robbery statute, I would first of all like to read a statement voluntarily made by the defendant, dated June 7, 1956, at Glenwood, Iowa.

[Statement is read.]

"THE COURT: Would you stand, please, Mr. Jarrett.

"(The defendant arose).

"THE COURT: You heard Mr. Stephenson's statement. Any corrections you wish to make in regard to it? At this time, if you have any statement you wish to make to the Court before sentence is pronounced or why it should not be pronounced, or any information you would like the Court to have, why you will now be given an opportunity to do so.

"You heard Mr. Stephenson's statement. Do you have any corrections or anything you wish to add to that?

"DEFENDANT JARRETT: No, nothing.

"THE COURT: Do you have anything you wish to say in your own behalf, Mr. Jarrett?

"DEFENDANT JARRETT: No."

arrest in 1956 he was in possession of an automobile and of a gun, both admittedly stolen, and upon his personal testimony to the effect that at the Bugas-Foster interview he requested counsel but was told he would have to get his own lawyer; that he was in ill health at the time; that the agents promised that if he would plead guilty to the federal charge, "the court would be lenient"; that unless he cooperated all charges would be prosecuted and he would be subject to a total of 500 years imprisonment; that his confession was signed "after a short period of questioning"; that he had not been informed "of the benefits or purposes of counsel" and did not understand "what an attorney's function was or what an attorney could do for him"; that the United States Commissioner did not give him a preliminary hearing or advise him of his right to counsel; and that he was interviewed by United States Attorney Stephenson in the county jail.

■ The initial aspect of Jarrett's point about the involuntariness of his confession seems to center, as is not uncommon in these cases, upon Rule 5(a), Fed.R.Crim.P., and upon the holdings in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and the allegation that, because at the time of his arrest by the sheriff he possessed an automobile stolen in another state and a gun taken in a burglary in still another state resulting in the cashing of stolen checks in different states, he could have been arrested without a warrant for federal violations. Thus we have the rather unusual situation of a federal prisoner complaining because he was not promptly arrested for federal offenses other than the one with which he was eventually charged. We are not persuaded that a defendant is possessed of a right to designate which of several possible federal charges is to occasion his arrest.

■ In any event, the McNabb-Mallory argument is unavailing. Rule 5(a) "may be invoked only when an officer makes an arrest under federal law" or, perhaps, when there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them. "The rule has no application where, as here, it is clear that at the time the statement was made the person has been arrested by local authorities and is in their sole custody." Tucker v. United States, 375 F.2d 363, 370 (8 Cir. 1967), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189; Young v. United States, 344 F.2d 1006 (8 Cir. 1965), cert. denied, 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105; Chapman v. United States, 397 F.2d 24, 26 (10 Cir. 1968). "A bare suspicion of a 'working arrangement'" is insufficient. Young v. United States, supra, 344 F.2d at 1010; Tucker v. United States, supra, 375 F.2d at 370.

■ We turn to the main aspect of the voluntariness issue. This, as we see it, is solely one of credibility. The record amply supports the district court's finding that Jarrett's confession was voluntary and that Jarrett's rejection of appointed counsel was a choice knowingly and intelligently made:

a. Much of Jarrett's protestation on the witness stand is belied by the undisputed facts. At the time of the hearing he was 44 years of age. He was 32 at the time he pleaded guilty. He was no mere youth. He had completed grade school and had attended high school. He could read and write. He testifies well and prepares a most acceptable brief.

b. Jarrett is no stranger to the criminal law, to the trial process, and to the functioning of attorneys. He testified that in 1946 he pleaded guilty to charges of obtaining money by false pretenses and of larceny of a motor vehicle; that in January 1950 he pleaded guilty to a Dyer Act charge; that in September 1964, while free on parole on the Salem bank robbery charge, he was convicted and sentenced for still another bank robbery; and that it is the latter sentence

which he is presently serving. In response to an inquiry as to whether he had a lawyer represent him on the Dyer Act charge and the charge of obtaining money by false pretenses, he replied, "I think so, but I'm not sure."

c. Jarrett's allegations that, in the interviews with agents Bugas and Foster he had insisted upon counsel and was refused and his allegations that Bugas and Foster promised him that if he cooperated all other charges would be dropped were flatly and specifically denied by each of those agents.

d. Jarrett's allegations that he was interviewed by United States Attorney Stephenson in the county jail, and the inference he would thereby create that the prosecutor made threats or promises, are specifically denied by Judge Stephenson. The Judge testified, "I never in the seven years I was United States Attorney ever visited any defendant in the Polk County Jail and no one in my office ever was to do so under any circumstances." He acknowledged that, after reviewing the files, he was of the opinion that he did interview Jarrett in response to his request but that he did so upon word received from the United States Marshal and only in the Marshal's office. He testified further that he would never have discussed with Jarrett or any other prisoner "the concept of jeopardy as it is involved in a bank robbery charge", for he "never gave an opinion as to any legal matter to any defendant." The Judge denied telling Jarrett that he would ask the court to dismiss other pending charges. "That is false. I would never make any promises to any defendant as to any other charges." He denied that he told Jarrett that the charges pending against him elsewhere could total 500 years of imprisonment.

e. Jarrett's concern about his health problems at the time of his plea and his suggestion that these contributed to his lack of understanding center in his testimony that he had had rheumatic heart disease, that he thought he was having heart trouble, and that while in jail he had several x-rays taken and "apparently they decided I either had tuberculosis or a tumor of some type." This testimony, however, fades into insignificance when on cross-examination he conceded that he was taken to a hospital in June 1956; that x-rays were taken; and that the medical authorities had not let him think he had tuberculosis or a tumor. He could not recall that the medical impression at the time was only a chronic lung infection.

f. In response to the court's inquiry whether there was anything further he would like to say, Jarrett stated, "I would just like to say that it's very hard to describe a person's frame of mind to another person. As I could not possibly have a duel of words with a skilled lawyer, I would not attempt to do so. My education alone would be a bar. * * * I can very easily be trapped; this is true; I admit this."

It is obvious, therefore, that the situation, at best, is the usual one of conflicting testimony. We cannot say that the trier of fact, here Judge Hanson, erred as a matter of law in accepting the testimony of witnesses Bugas, Foster and Stephenson and in not accepting that of Jarrett. On the cold record, and without the benefit of hearing the respective witnesses testify in person, we, too, would reach the same conclusion.

The factual aspects here bear no resemblance whatsoever to Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), urged upon us by Jarrett, or to cases such as Davis v. Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), and Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). The case falls on that side of the line represented by such cases as Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Wakaksan v. United States, 367 F.2d 639, 644 (8 Cir. 1966), cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 34; and Cox v. United States, 373 F.2d 500 (8 Cir. 1967). See Connors v. South Dakota, 422 F.2d 122 (8 Cir. 1970).

We hold that the district court did not err in ruling that Jarrett's confession was legally voluntary.

■ 2. Rule 44. This rule, of course, serves to fulfill the sixth amendment's guaranty of the assistance of counsel. But it also recognizes that it is possible for an accused to waive the appointment of counsel.

Jarrett urges upon us Mr. Justice Black's familiar definition in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), that "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege", and the waiver standards developed in Von Moltke v. Gillies, 332 U.S. 708, 721–724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). In his brief he concedes that the transcript clearly shows that the trial court advised him of his right to counsel and that it would appoint an attorney for him without cost. What Jarrett's claim of violation of Rule 44 comes down to is only that the court did not advise him "of the benefits of counsel or what counsel could do for him" and therefore, it is said, his right to counsel "cannot be said to be competently and intelligently waived."

All this is repetitious of Jarrett's first point and all we have said above has application here. Jarrett's age, intelligence, and experience; the flat denial of his factual allegations by all those who worked with him in 1956; his waiting more than 12 years to lodge his allegations; Judge Graven's examination of Jarrett at the arraignment; the court's repetition of his inquiries the next day at the time of sentence; Jarrett's failure to object or remonstrate when his confession was read in full to the court at the sentencing hearing; and the late Judge Graven's known care and experience in cases of this type all militate against Jarrett's current assertions. His argu-

ment that his waiver was not understandably and intelligently made has a hollow ring, is a weary one, and does not persuade us.

■ 3. Rule 11. Jarrett's plea of guilty was accepted on July 2, 1956, a decade prior to the 1966 amendments of Rule 11.[5]

The first part of Jarrett's argument on Rule 11 centers in Judge Stephenson's testimony at the motion hearing that in his capacity as United States Attorney he necessarily rendered no legal opinion on any matter to Jarrett or to any defendant and, specifically, that he would not have explained to him the "concept of jeopardy as it is involved in a bank robbery charge", as contrasted with his statement to the sentencing court that he had advised Jarrett of "the serious nature of the charge pending against him * * * and advised him of the maximum penalty. * * *" Jarrett would equate legal opinion with explanation of charges, and he reasons that because no legal opinion was rendered the nature of the charge of robbery with aggravation was not explained and he had no understanding of the charge. This is spinning legal theory rather finely and is frivolous.

The second aspect of Jarrett's Rule 11 argument rests on McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *McCarthy*, of course, concerned Rule 11 as revised in 1966 with its added specific requirements that the court address the defendant personally and be satisfied that there is a factual basis for the plea. In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), decided a month after *McCarthy* and concerning a guilty plea entered in 1954, the court declined to apply *McCarthy* retroactively. This court, of course, has recognized the *McCarthy-Halliday* rulings. Cantrell v.

---

5. In its pre-1966 form Rule 11 read:
"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

United States, 413 F.2d 629, 632–633 (8 Cir. 1969); Kress v. United States, 411 F.2d 16, 20 n. 3 (8 Cir. 1969).

The record here, upon which we have commented already at too great length, adequately demonstrates, in our view that the requirements of Rule 11, as it read at the time of the entry of Jarrett's plea of guilty in 1956, were fully met by Judge Graven and that any burden which the government may have had to demonstrate that Jarrett entered his plea voluntarily and with appropriate understanding was sustained. Our comments in Cantrell v. United States, supra, 413 F.2d at 632, and in Kress v. United States. supra. 411 F.2d at 21, are supportive of this conclusion. See also Bennett v. United States, 411 F.2d 980, 981 (6 Cir. 1969); Bell v. United States, 412 F.2d 773 (5 Cir. 1969); Bennett v. United States, 413 F.2d 237, 241–242 (7 Cir. 1969); United States v. Brown, 413 F.2d 878 (9 Cir. 1969); Robins v. United States, 413 F.2d 1290 (7 Cir. 1969); Ford v. United States, 418 F.2d 855 (8 Cir. 1969). Compare Berry v. United States, 412 F.2d 189 (3 Cir. 1969), and Lord v. United States, 412 F.2d 499 (4 Cir. 1969).

Affirmed.