**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Trully Junior HATHORN, Defendant-
Appellant.**

No. 71–1308
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 8, 1971.

Rehearing and Rehearing En Banc
Denied Dec. 22, 1971.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y. et al., 431 F.2d 409, Part I (5th Cir. 1970).

Roy Pitts, Meridian, Miss. (Court Appointed), for defendant-appellant.

E. Donald Strange, Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Viewing the evidence in the light most favorable to the government, as we must, discloses that the route that led to the present Dyer Act conviction of Trully Junior Hathorn originated on a stretch of lonely highway outside Philadelphia, Mississippi when a 1967 Pontiac driven by Hathorn crashed into the rear of a 1966 Mustang operated by Betty Jane Price. After the accident, Hathorn commenced to walk down the highway toward Philadelphia and away from the scene of the accident. Mrs. Price described the miscreant to the Highway Patrolman first on the scene as a Negro male wearing a green shirt. This patrolman radioed her brief description to a fellow patrolman, Smith, who, fortuitously, looked up to see Hathorn, a Negro male then wearing a green shirt, about 100 yards from his position. Smith stopped Hathorn and asked if he had been involved in an accident, to which Hathorn answered in the affirmative. Smith then requested Hathorn to accompany him back to the scene of the accident, and Hathorn complied. Immediately upon arriving at the scene, Smith took down the car tag number of the Pontiac and upon checking it with the National Crime Information Center, was advised that the car had been stolen in Illinois. Smith arrested Hathorn for driving under the influence of intoxicating beverages and leaving the scene of the accident and placed him in the Philadelphia jail. Since it appeared an interstate matter could be involved, the Federal Bureau of Investigation (FBI) was called. The next morning, after receiving his *Miranda* warnings from the FBI and executing a waiver of rights form, Hathorn confessed to having knowingly driven the stolen car from Chicago, Illinois to Mississippi.

After a trial to a jury, Hathorn was convicted of transporting a stolen motor vehicle in interstate commerce, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 2312 (1970). He was placed in the custody of the Attorney General for a period of four years. Hathorn first argues that his arrest was illegal under Mississippi law, and that all information gained by the exploitation of that arrest should have been suppressed. He argues that his arrest was effected at the time Patrolman Smith asked him to get into the patrol car, and at that time since no misdemeanor was being committed in the officer's presence and no probable cause existed to believe a felony had been committed, his arrest was beyond the officer's statutory prerogative.[1] Assuming *arguendo* that an arrest took place at this point in time, we believe that a misdemeanor—leaving the scene of an accident—was committed in the officer's presence. When Smith first saw Hathorn he knew that an accident had occurred, that a man answering the general description of Hathorn was involved in the accident, and that he had left the

---

[1]. Miss.Code Ann. § 2470 (1942) provides: An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

accident scene. When Hathorn admitted to Smith he was the person involved in the accident, it became apparent that he was in the process of committing the misdemeanor of leaving the scene of the accident.

■ During the course of the trial, the district court allowed the confession made to the FBI to be admitted into evidence without holding the required extrajury Jackson v. Denno hearing. *See* Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and 18 U.S.C.A. § 3501 (1969). Upon realizing his mistake, the District Judge conducted the required hearing at the end of the presentation of all evidence but before the case was submitted to the jury. Hathorn contends that this procedure was insufficient to cure the earlier error. We decline to so rule. Although we can find no case squarely in point and have been cited to none, that which occurred here does not differ in legal principle from the situation presented to the Supreme Court in Jackson v. Denno. The Supreme Court did not void Jackson's conviction for the lack of a hearing but remanded the cause to the trial court with directions to hold a hearing on the voluntariness of the confession. The Court expressly stated that the defendant did not have to be retried if the confession was found to be voluntary. Obviously if the hearing disclosed voluntariness, such a finding rendered any defect in the prior proceedings harmless.

Hathorn relies heavily upon Schaffer v. United States, 221 F.2d 17 (5th Cir. 1955). In that case, however, the trial judge, although willing to let the defendant testify as to voluntariness outside the presence of the jury, had earlier ruled that the confession was voluntary as a matter of law and indicated he had no intention of changing his mind. This Court correctly ruled that the gesture of the trial judge in going through the motions of the voluntariness hearing was sheer formality. Unlike the trial judge in *Schaffer*, the judge in the case sub judice accorded the defendant his full

Jackson v. Denno rights. We certainly assume that he would have changed his ruling on voluntariness if the evidence had been such as to indicate the confession was in any way coerced. The record discloses that the hearing was full and fair and in no sense a formality.

Most important, Hathorn has shown no prejudice flowing from this belated procedure. The core of the issue was the voluntariness *vel non* of Hathorn's act in confessing his guilt. Since the trial judge determined, albeit late, that the confession was voluntary, the fact that the confession was heard by the jury resulted in no prejudice to Hathorn. The jury was entitled to hear this evidence. Certainly the proceedings had not reached an irremedial stage at the time the hearing was conducted since the trial judge could have declared a mistrial had he found the confession involuntary.

■ Hathorn's contention that the trial judge erred in not requiring all police officers present at his interrogation and subsequent confession to take the stand to rebut his allegations of involuntariness, erroneously relies upon Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 9 L.Ed.2d 634 (1967). There, *none* of the officers who were present at the time of Sims alleged mistreatment were ever called to testify, either at the original trial or at the subsequent voluntariness hearing on remand. The Court presumed that such a total absence of rebuttal testimony, when its absence had been noted in an earlier appeal and a second chance to produce it had been accorded, lent support to the conclusion that it would not in fact have rebutted Sims' testimony. *Sims* did not hold that the prosecution must produce *all* officers present. It stands only for the proposition that the failure to call *any* officers to rebut the defendant's allegations of coercive conduct justifies a presumption that such rebuttal was impossible. The United States attorney has the duty and

the prerogative of determining how much evidence he needs to produce to carry his burden of proving the defendant's guilt. It is not for this Court to say how many witnesses must be called to attest to a single fact. Certainly, if a defendant believes the testimony of any officer to be disingenuous, there is nothing to prevent him from calling other witnesses who were present to the stand.

■ Hathorn next contends that the delay in obtaining the confession made to the FBI and the delay in bringing him before a federal magistrate is violative of 18 U.S.C.A. § 3501 (1969),[2] and that therefore his confession should have been suppressed. Hathorn was arrested at approximately 10:00 p. m., but the FBI was not notified until early the next morning. The FBI agent did not arrive at the Philadelphia jail until about noon of that day. The confession was obtained shortly after the interrogation began. Hathorn construes Section 3501(c) to read that all confessions ob-

2. § 3501. Admissibility of confessions

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

tained more than six hours after arrest are not admissible in a trial in a federal court. We disagree. Rather, we agree with the 9th Circuit, United States v. Halbert, 436 F.2d 1226 (9th Cir. 1970), that Section 3501(c) should not be given this construction. While Section 3501(c) can be construed to mean that the only confessions obtained more than six hours after arrest that can be admitted are those that were elicited during the time necessary for travel to the magistrate, we agree with the 9th Circuit that Congress did not intend to legislate any such arbitrary edict. We believe the correct interpretation to be that Congress established six hours as a minimum period which would pass muster. If, therefore, a longer delay occurs, it merely constitutes another factor to be considered by the trial judge in determining voluntariness. This case presents a good example of the harshness of the construction contended for by Hathorn. He was arrested at night by state officers and still remained in state custody when he confessed the following day. We are asked to fault federal officers because state officials did not contact them during the night. In the absence of any showing that such conduct was for the purpose of enabling state police to interrogate or harass Hathorn or to cause him to want to confess to federal officials, we decline to declare federal procedures here were defective.

No federal charges were lodged against Hathorn and he was not taken before a magistrate for arraignment until five days after he confessed. He remained under state detention during this five-day period. No reason appears in the record for this delay. We conclude that the period between confession and arraignment is, like the period between arrest and confession, no more than an additional factor that the trial judge should consider in his determination of voluntariness. Again we discern no prejudice to Hathorn flowing from the delay. Like the 9th Circuit, we need not decide whether "arrest" or "detention" as those terms appear in Section 3501(c) include State as well as federal custody. *Halbert* explains in great detail the various extant problems in interpreting Section 3501(c) and fully explicates the various reasons for its holding and our holding. We decline to attempt to embellish upon that opinion.

■ Immediately after the confession was given, FBI agents went to a local body shop where the Pontiac was stored, secured the owner's permission to search the car, and then, upon searching the car, found a slip of paper with the name and phone number of Hathorn's mother. It is admitted that the agents had no search warrant. The arguments of the parties have largely centered around Hathorn's standing to challenge this search. We find it unnecessary to enter this judicial thicket [3] since the warrantless search of the impounded automobile was not unreasonable. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970); United States v. Brown, 432 F.2d 552 (5th Cir. 1970).

The judgment and commitment of the district court is

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

Hathorn correctly points out that in our *arguendo* assumption concerning his

---

3. This Circuit's position as to the standing of an accused to challenge a search made of an auto to which he has no proprietary interest is not completely clear. Compare the portion of Glisson v. United States, 406 F.2d 423 (5th Cir. 1969), which was not overruled by our *en banc* decision in United States v. Johnson, 431 F.2d 441 (5th Cir. en banc 1970), with United States v. Kilgen, 445 F.2d 287 (5th Cir. On Petition for Rehearing 1971).

initial detention we erred in holding that it could suffice as a legal arrest on grounds that the misdemeanor of leaving the scene of an accident was then and there committed in the presence of an officer. In reaching this conclusion we relied upon the fact that Hathorn admitted to the officer that he was involved in the accident. That admission, however, was properly ruled inadmissible by the trial court. Thus we improperly considered it.

■ However, this error does not affect the affirmance of Hathorn's conviction since the legality of that original detention can be upheld upon another basis. The later formal arrest of Hathorn back at the scene of the accident was for driving under the influence of intoxicating beverages. Under all of the facts disclosed by this record, Hathorn could have been arrested at the point and time of his initial detention for the misdemeanor of being drunk in a public place. Miss.Code Ann. § 2291 (1942) states that a person can be guilty of a misdemeanor if he is drunk in a public place in the presence of two or more persons. The Mississippi Supreme Court has held that a highway is a public place within the meaning of this section. *See* State v. Yearwood, 204 Miss. 181, 37 So.2d 174 (En Banc 1948), and Brown v. State, 231 Miss. 5, 94 So.2d 608 (1957). There were two patrolmen in the car when Hathorn was picked up. Thus all the elements of this offense occurred in the presence of the two officers. This would be a sufficiently related offense to make that detention a legal arrest. *See* United States v. Atkinson, 450 F.2d 835 (5th Cir. 1971).

The remainder of Hathorn's contentions are without merit. The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.