**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Rufus GAINES, Defendant-Appellee.**

**No. 76–1885.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1977.

Decided May 16, 1977.

---

Richard L. Kieser, U. S. Atty., South Bend, Ind., for plaintiff-appellant.

Ronald F. Layer, Hammond, Ind., Gerald Y. Sakaguchi, South Bend, Ind., for defendant-appellee.

Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

PELL, Circuit Judge.

This is an appeal by the Government under 18 U.S.C. § 3731 from an order of the district court granting defendant-appellee's motion to suppress evidence of a confession. After hearing evidence on the motion, the trial court found that Gaines' oral statements on March 10, 1972, were voluntarily made, but ordered suppression because the defendant at the time of the statements had been in custody for approximately forty-six (46) hours on an unrelated state charge and had not been taken before a judicial officer. The essential question on this appeal is whether the district court judge correctly concluded that it was his duty to suppress the confession.[1]

## I. Background

Defendant-appellee Rufus Gaines was indicted on June 14, 1972, along with two other men, Alexander English and Sam Hubbard, for the robbery of an armored car and the murder of its driver. After an initial mistrial, all three defendants were found guilty. On direct appeal, the convictions were affirmed. *United States v. English*, 501 F.2d 1254 (7th Cir. 1974), *cert denied sub nom. Hubbard v. United States*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). Subsequently, Gaines filed a motion to vacate sentence, which was denied and appealed to this court. In *United States v. Gaines*, 529 F.2d 1038 (7th Cir. 1976), this court ordered a new trial.

After the appointment of new defense counsel, Gaines filed a new motion to suppress, contending, *inter alia*, that he was not in a sufficiently stable physical or mental condition to understand his constitutional rights or to choose to utilize the protection said rights afforded, that his rights to be brought before a magistrate pursuant to federal and Indiana laws were violated, and that his oral statements should be presumed to be involuntary because of the denial of his constitutional rights and his statutory right under 18 U.S.C. § 3501.[2]

1. At the conclusion of its oral opinion, the district court stated as the basis for its ruling the following:

. . . I believe, because of the delay between the time the defendant was taken into custody—and it is undisputed that he was not taken before a magistrate for any purpose until shortly after he was brought into Federal custody—I believe that it is my duty under the law and under the cases and under the authorities to suppress this confession and I do so with great reluctance.

2. 18 U.S.C. § 3501 provides:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, *shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States* or of the District of Columbia *if such confession is found by the trial judge to have been made voluntarily* and if the weight to be

The district court judge recognized that the case had been before this court on two occasions. He determined that it was preferable to hear the evidence afresh on the suppression motion, inasmuch as it was arguable that the conflict-position in which Gaines' earlier counsel had placed himself might have affected his performance on the earlier motion to suppress. Subsequently, the trial court determined that the question of delay between Gaines' arrest and his appearance before the federal magistrate was a new and fresh issue.

Testimony adduced during three days of hearings established that Gaines had been incarcerated in the Gary City Jail by the Gary City Police on March 8, 1972. His jail classification card stated that Gaines was being held for investigation ["H4I"], and the police arrest sheet carried the notations "Do not release" and "to hold for F.B.I., Agent Whitaker." Moreover, the court calendar indicated that on all three days of Gaines' incarceration in Gary City Jail court was in session, so that it was possible for the police to prefer charges against Gaines for theft and shoplifting, which state offenses were the ostensible reason for his arrest.

The defendant-appellee attempted to establish that there was a "working arrangement" between the FBI and the Gary Police Department. Special Agent Allen Whitaker testified that prior to Gaines' arrest for shoplifting, he had discussed Gaines with Gary police officers, specifically Cobie Howard and Symeon Colquitt. The latter officer testified that he was looking for Gaines and that he knew that the FBI wanted to talk to him about the South Bend robbery and murder. Howard also testified that he knew that Whitaker wanted to talk to Gaines about the robbery. Both men admitted that they called the Gary FBI office shortly after Gaines was brought to the jail on the morning of March 8. Moreover, Whitaker testified that he had daily contact with individuals in the police department and that there was "a continuing, on-going inquiry" relating to the armored car robbery and murder.

Much of the testimony at the hearings was directed at Gaines' physical and mental condition. After examining all the testimony, the trial judge was able to find that Gaines had his addiction problem under control and gave his March 1972 statements voluntarily. The judge's determinations regarding the issue of an illegal detention and an unreasonable delay in taking Gaines before a magistrate [3] were not so clear. The trial judge made no finding that there was a "working arrangement" between the FBI agents and the Gary police officers. However, the judge did conclude that the federal law enforcement officers were bound by the time that the defendant Gaines was in custody. Thus, while recognizing that Gaines was taken almost immediately to a magistrate after federal custody commenced, the trial judge expressed the view that this fact was of no avail to the Govern-

given the confession is left to the jury *and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing. [Emphasis supplied.]

3. On appeal, the Government concedes that Gaines' detention for almost two days without bringing him before a magistrate violated state law. For an illuminating summary of the practices of the Gary Police Department in detaining persons without charges or without an appearance before a magistrate, see *Dommer v. Hatcher*, 48 Ind.Dec. 196, 427 F.Supp. 1040 (N.D. Ind. 1975).

ment on the issue of unreasonable delay.[4] Beyond referring to a number of cases, which· are discussed hereinafter, the trial judge elucidated no basis for his conclusion that the Government was "bound" by the original state custody.

## II. Delayed Presentment before Available Magistrate .

■ A confession obtained prior to taking the accused before a magistrate or commissioner but after unnecessary delay in so taking him is inadmissible. This basic rule is defined by Rule 5(a), Fed.R.Crim.P.,[5] and by such Supreme Court decisions as *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). In *Mallory*, the Supreme Court referred to Rule 5(a)'s requirement that appearance before a commissioner be "without unnecessary delay" as a compendious restatement of prior specific statutory provisions. 354 U.S. at 452, 77 S.Ct. 1356. Congress attempted to make drastic inroads on the *McNabb-Mallory* rule through the enactment of 18 U.S.C. § 3501. *See* 1 C. Wright, Federal Practice and Procedure § 72, at 73 (1969 ed.).

In *United States v. Broadhead*, 413 F.2d 1351, 1354–60 (7th Cir. 1969), *cert. denied*, 396 U.S. 1017, 90 S. Ct. 581, 24 L.Ed.2d 508, this court examined the policy behind *McNabb, Mallory*, and Rule 5. We recognized that Rule 5 is ordinarily applicable only to federal arrests and detentions but observed that its requirement would apply in situations wherein "a 'working arrangement' is clearly shown." *Broadhead, supra* at 1359. In that case, we found a coopera-

tive situation between local Michigan police and FBI agents which was virtually indistinguishable from that in *Anderson v. United States*, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), where the Supreme Court applied *McNabb* to hold inadmissible confessions obtained while prisoners were in nominal Tennessee custody but were, in fact, Federal prisoners. *Id.* at 1358.

However, to our knowledge, no court has ever determined that a "bare suspicion" of a working arrangement between federal and local authorities is sufficient to make Rule 5(a) protections or a *McNabb-Mallory* argument available. *See Jarrett v. United States*, 423 F.2d 966, 971 (8th Cir. 1970). Impliedly, at the very last, we have required a defendant to establish that a delay "was deliberately induced for the express purpose of producing evidence." *United States v. Hamilton*, 409 F.2d 404, 406 (7th Cir. 1969).

■ More recently, in *United States v. Davis*, 532 F.2d 22, 25 (7th Cir. 1976), this court recognized that "Rule 5(a) must be read together with 18 U.S.C. § 3501(c) . . . [regarding] the issue . . . concerning the delay between the time of defendant's arrest and his initial appearance before a magistrate." Until the time of *Davis*, we had no occasion to examine fully the interaction between the statutory provision and the strictures of Rule 5(a). Similarly, we had no occasion to discuss the matter in our recent decision of *United States v. Medina*, 552 F.2d 181 (7th Cir. 1977), which raised a voluntariness issue quite similar to the one presented in this case. Thus, the district court's suppression

---

**4.** Because the briefs and oral argument placed important emphasis on the crucial element of a "working arrangement" between federal and local law enforcement officers, we set out the pertinent portion of the judge's oral ruling:

It is terribly unfortunate that very competent and able Federal law enforcement officers are bound by the time that this defendant was in custody, up to the time he gave the statement, but *I think they are,* and I don't think the fact that he was in State custody for a while and immediately when he got into Federal custody—I don't think that helps the

Federal Government on this issue. It should, but it doesn't. [Emphasis supplied.]

**5.** Rule 5(a), Fed.R.Crim.P., in pertinent part, provides:

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

order was entered without any express judicial guidance from this court.

The courts which have construed 18 U.S.C. § 3501(c) have generally concluded that a delay longer than six hours does not itself render a confession inadmissible. *See, e. g., United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir. 1976), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976); *United States v. Edwards,* 539 F.2d 689, 691 (9th Cir. 1976), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594; *United States v. Bear Killer,* 534 F.2d 1253, 1256–57 (8th Cir. 1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118; *United States v. Crocker,* 510 F.2d 1129, 1138 (10th Cir. 1975); *United States v. Mandley,* 502 F.2d 1103, 1105 (9th Cir. 1974); *United States v. Hathorn,* 451 F.2d 1337, 1340–41 (5th Cir. 1971); and *United States v. Halbert,* 436 F.2d 1226, 1229–37 (9th Cir. 1970). Thus, the aforementioned decisions support the proposition that if a delay longer than six hours occurs it is merely another factor to be considered by the trial judge in determining voluntariness. *Hathorn, supra* at 1341. The legislative history of § 3501 as explored in detail in *Halbert, supra,* is persuasive that Congress certainly did not intend to broaden the protection afforded under *McNabb-Mallory. Accord, United States v. Marrero,* 450 F.2d 373, 377 (2d Cir. 1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972).

In his effort to persuade the trial judge that suppression was required, the defendant-appellee accurately noted that this court had not yet construed 18 U.S.C. § 3501. The defendant-appellee supported his delay argument by citing to the trial court *United States v. Erving,* 388 F.Supp. 1011 (W.D. Wis. 1975); *Williams v. State of Indiana,* Ind., 348 N.E.2d 623 (1976); and *United States v. Chadwick,* 415 F.2d 167 (10th Cir. 1969). Examination of the record satisfies us that it was these authorities

upon which the trial judge based his conclusion that it was his duty to suppress the March 1972 oral statements. *See* note 1 *supra.* While we agree that the three cases are strongly supportive of Gaines' argument, we do not agree that they mandate suppression of Gaines' statements. To the extent the trial judge read the cases as divesting him of power to exercise judicial discretion and to balance the conceded improprieties of the Gary police officers against other important interests he read the cases too broadly.

In *Erving,* the district court judge rejected *Halbert*'s attempt to reconcile subsection (c) with subsections (a) and (b) of 18 U.S.C. § 3501. Recognizing that the six-hour period specified in subsection (c) had been exceeded, the judge determined that the confession was not subject to the statutory command that it should not be inadmissible solely because of delay in bringing the defendant before a magistrate. *See* 388 F.Supp. at 1014–20. Significantly, however, the trial judge did not hold that the delay of 11 hours and 20 minutes *required* exclusion of the confession. Instead the judge ordered further briefing, expressly asking for comments of counsel regarding the exercise of discretion.[6]

We need not in the present case determine whether Judge Doyle's construction of § 3501(c) is as cogent as, or more persuasive than, the *Halbert* construction which has found favor with the other courts of appeals. Whatever the merits of the opposing approaches, we think it clear that a district court judge retains discretion to exclude a confession where there is a delay in excess of six hours. However, the exercise of such judicial discretion depends upon a congeries of factors, including such elements as the deterrent purpose of the exclusionary rule, the importance of judicial integrity, and the likelihood that admission of the evidence would encourage violations of the Fourth

---

**6.** "If I am correct in my view, expressed earlier in this opinion, that despite 18 U.S.C. § 3501, a voluntary in-custody confession may sometimes be suppressed solely because of the duration of the interval between the time of arrest and the time the confession is made, and that the command of § 3501(c) is not applicable to the particular confession at issue here, does it follow that this particular confession must be suppressed? Or is there room for an exercise of discretion?" 388 F.Supp. at 1021.

Amendment. *Cf. generally United States v. Janis,* 428 U.S. 433, 457–60, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

In *Williams,* the appellant made an initial confession after being held by the police for sixty-eight hours, and a second confession after another twenty-three and a half hours of detention. Over seven days elapsed before the appellant was taken before a magistrate. The Indiana Supreme Court determined that *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), based upon *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), mandated suppression of the confession as the product of an illegal detention, even if the initial arrest was made with probable cause and the confession was made voluntarily. Noting that the United States Supreme Court had emphasized the importance of a prompt judicial determination of probable cause in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Indiana court determined that the continued detention after the initial confession was also for the purpose of eliciting a confession. 348 N.E.2d at 630. Significantly, however, the *Williams* majority opinion observed that the determination whether the confession is the product of free will or the tainted result of the detention was under *Wong Sun* dependent entirely on the facts of the particular case. Although there is language in *Williams* that suggests that the long duration of the detention might itself require suppression, such language is balanced by other references to a consideration of "the facts of this case in light of the *Brown* criteria . . .." *Id.* at 629.

■ This court need not determine the correctness of the trial judge's conclusion that a state court trial judge would be required under *Williams* to exclude Gaines'

statements if the criminal trial took place in a state court.[7] It is sufficient to state that we do not read *Williams* as holding that "the time element alone" is always and necessarily controlling. We think that the majority opinion in that case lays down no *per se* rule in connection with the delay question. Of course, the state courts are empowered to establish prophylactic rules in order to ensure compliance with state constitutional provisions. But such rules are not binding upon trial judges in the federal judicial system.

As we have noted, trial judges retain judicial discretion to exclude confessions obtained after a delay of more than six hours in presenting an arrested person before a magistrate. If the trial judge in the instant case had attempted to exercise discretion in suppressing the oral statements of Rufus Gaines, we would have a different case. The record establishes that the trial judge broadly read the cases as requiring him to suppress. We think that the law would have required suppression only if a "working arrangement" was clearly shown. *Broadhead, supra* at 1359.

■ Interviews of persons in state custody by federal officers have been permitted and statements made during such interviews have been generally held admissible, provided that the interviews and resulting confessions are not in pursuance of a collusive working arrangement between state and federal officers whereby the salutary purposes of Rule 5 are subtly circumvented. *Chadwick, supra,* 415 F.2d at 170. That case observes that no balancing test need be employed under certain circumstances:

> If, from an objective appraisal of the surrounding circumstances, it appears that an arrested person is detained in state custody for the purpose of allowing

---

7. Although the trial judge explicitly recognized that his decision was not controlled by decisions of the Indiana Supreme Court, we think it clear that his ultimate conclusion as to his "duty" rested in part upon an assessment of what would happen to Gaines' statements in a state court trial:

> . . . [B]ut there is no question—that is not—the troublesome problem is: That there

is no question that under the facts of this case by—if it were—if it were in a State Court where the *Williams* decision of Justice DeBruler is a binding precedent, then that decision would—would require the suppression of this statement, because of the time element and the time element alone.

federal officers to obtain a confession before he is taken to a commissioner [magistrate] for arraignment [preliminary hearing] in accordance with Rule 5, the confession is ipso facto inadmissible.

*Id.* (Citations omitted.)[8] However, the burden is on the defendant to show that state custody was "designingly utilized" to circumvent Rule 5(a). *Id.* at 171.

In the present case, if Gaines had clearly shown that the FBI had designingly utilized state custody by entering into a collusive working arrangement with Gary police officers in order to obtain a confession to the robbery and murder in South Bend, exclusion of his March 10 statements would indeed be required by law. On the present record, we do not think the defendant-appellee has made such a showing. We agree with the defendant-appellee that the jail classification card, the police arrest sheet, and the testimony of the law enforcement officers permit an inference of an improper working arrangement. However, the district court made no such finding, concluding that the Federal Government was bound by the period of state custody upon the basis of its reading of the case law. Absent such a finding, exclusion of Gaines' statements is not "required" as a matter of the district court's "duty." Accordingly, the suppression order of August 30, 1976, must be reversed.

In so reversing, we do not intend to limit in any way the trial judge's discretion regarding the ultimate admission or exclusion of the March 10 statements. As we read the trial judge's oral opinion, *see* note 4 *supra*, he has already impliedly found that there was no collusive working arrangement. We think it highly unlikely that any federal judge would characterize as "very competent and able" federal agents who would intentionally violate a suspect's rights under the constitution and the federal rules of procedure. Nonetheless, Gaines' theory of what transpired in early March 1972 does find some support in the record. We would be placing a stamp of approval upon highly improper law enforcement efforts if we determined, as a matter of law, that the trial judge was required to admit the challenged statements. Whether or not the trial judge reconsiders his August 30 order in the light of our ruling that he has discretion to exclude shall remain a matter for his determination.

For the reasons hereinbefore set forth, the suppression order of August 30, 1976, is reversed. Our mandate shall issue forthwith.

REVERSED and REMANDED.

---

8. By referring to an "arraignment" in accordance with Rule 5, the *Chadwick* court made a very common mistake. As is made clear in 1 Wright, *supra* at § 161, at 349:

   . . . [T]he term "arraignment" is often misused in federal practice. Even a Supreme Court justice, fastidious in his use of the language, has spoken of "arraignment" when the reference was in fact to the initial appearance before the commissioner or magistrate, required by Rule 5(a).

The same treatise notes, *supra* at § 71, at 60:

   The appearance before the magistrate has been commonly referred to in the cases and literature as "arraignment." It is quite clear that this is not a proper use of that term. The settled meaning of "arraign" is "to bring a prisoner before the bar of the court to answer the matter charged upon him in the indictment." The procedure is covered by Rule 10, which uses the term "arraignment" both in its title and in its text. The purpose of the appearance before the magistrate and the preliminary hearing, dealt with in Rule 5, is quite different.