# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3760

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Jose Guadalupe Montano-Gudino, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 12, 2002

Filed: October 28, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Police seized twenty-two pounds of methamphetamine from a commercial storage unit in Des Moines and then detained Jose Guadalupe Montano-Gudino when he came to remove its contents. Consensual searches of his vehicle, person, and residence yielded a "drug note" and other incriminating evidence. A jury convicted him of conspiring to distribute methamphetamine and heroin in violation of 21 U.S.C. § 846, and the district court[1] sentenced him to 135 months in prison. Montano-

_____

[1]The HONORABLE RONALD E. LONGSTAFF, Chief Judge of the United States District Court for the Southern District of Iowa.

Gudino appeals, arguing the district court erred in denying his motion to suppress, the evidence was insufficient, the court erred in admitting a threat against a government witness by one of the alleged conspirators and in refusing to give a "buyer-seller" jury instruction, and the court committed four sentencing errors. We affirm.

## I. Fourth Amendment Issues.

Acting on informant Jesse Hastie's tip, police seized the methamphetamine in the storage unit and placed the storage facility under surveillance. A few days later, Montano-Gudino appeared with a copy of the rental agreement, the multi-digit access code to the secure portion of the facility, and a key to one of two padlocks on the unit in question. The facility manager alerted police and furnished Montano-Gudino with bolt cutters to remove the second padlock. After Montano-Gudino had loaded the entire contents of the storage unit into his truck, the police arrived and detained him for questioning. It was snowing heavily, so three officers accompanied Montano-Gudino to a small room inside the storage facility offices. After being advised of his Miranda rights in Spanish and in English, he signed written consents to search his vehicle and his residence, and orally consented to a search of his person by emptying his pockets for the officers. On appeal, Montano-Gudino argues that the evidence from these searches should have been suppressed as the fruits of an illegal detention or, alternatively, of unlawful coercion. Like the district court, we disagree.

Montano-Gudino first argues that his initial detention outside the storage unit violated the Fourth Amendment because it was based solely on the officers' "mere hunch" he was engaged in criminal activity. This contention is without merit. Because the police had seized a large quantity of methamphetamine from the locked storage unit a few days earlier, they may well have had probable cause to arrest the person who removed the three large detergent boxes that formerly contained the contraband. At a minimum, the officers had reasonable suspicion to detain that person while they attempted to determine whether he emptied the storage unit at the

direction of the drug traffickers, or with knowledge of the unit's illegal contents. See United States v. Long, 674 F.2d 848, 853 (11th Cir. 1982); United States v. D'Antignac, 628 F.2d 428, 434-35 (5th Cir. 1980). Moreover, the officers had reviewed the storage unit rental agreement and knew Montano-Gudino was not listed as the lessee, which gave them an additional reason to question him about his actions in attempting to remove its contents.

Montano-Gudino next argues that his continued detention while the officers escorted him to a room in the storage facility offices and questioned him exceeded the scope and duration of a permissible investigatory stop. See generally Florida v. Royer, 460 U.S. 491, 500 (1983). Again, we disagree. The police were clearly justified in asking Montano-Gudino to explain his suspicious conduct in accessing and emptying the storage unit. See United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992). It was reasonable to take him inside for this purpose. Asking for consent to search his vehicle and person was "a diligent and reasonable manner" of conducting the investigation. United States v. Sharpe, 470 U.S. 675, 687 (1985). And the fruits of those initial searches fully justified any additional detention needed to complete a consensual search of his residence.

Finally, Montano-Gudino argues that the consent to search his person was involuntary because he was not told he did not have to consent, he was not free to leave, and he was in a small room with three armed police officers. The record reflects that Montano-Gudino voluntarily emptied his pockets in response to the officers' request. He was being lawfully detained, and there is no evidence other than the detention itself that his consent was not freely and voluntarily given. No "presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate." United States v. Drayton, 122 S. Ct. 2105, 2113 (2002). In these circumstances, the district court's finding of voluntary consent was not clearly erroneous. See United States v. Hawthorne, 982 F.2d 1186, 1191 (1992) (standard of review).

## II. Sufficiency of the Evidence.

Montano-Gudino argues the evidence was insufficient to find him guilty beyond a reasonable doubt of knowingly conspiring to distribute either heroin or methamphetamine. When reviewing the sufficiency of the evidence, we "examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences." United States v. Ivey, 915 F.2d 380, 383 (8th Cir. 1990).

As to the heroin charge, the drug note found in Montano-Gudino's pocket stated, "5.4 OZ., $8,800 owed, $1,600 per ounce, Greg and Carol Page." At trial, Gregory Page testified Montano-Gudino sold Page five ounces of heroin and Montano-Gudino's brother, Sandro Montano, sold Page two ounces. Detective Kenneth O'Brien, the officer in charge of the investigation, testified that seven ounces of heroin is equivalent to eight hundred dosage units, a distribution quantity. The jury was entitled to believe this testimony, which was sufficient to convict Montano-Gudino of conspiring to distribute heroin.

As to the methamphetamine charge, the principal evidence was that Montano-Gudino emptied out a storage unit that had contained twenty-two pounds of methamphetamine. In this regard, Jesse Hastie testified that he rented the commercial storage unit to store methamphetamine for Miguel Hernandez, paying the rental fee and locking the storage unit with money and two padlocks supplied by Hernandez. After Hastie gave his copy of the rental agreement and the key to one padlock to Hernandez, Hastie and Hernandez packed the methamphetamine in detergent boxes and stored them in the storage unit. Less than a week later, Montano-Gudino appeared at the storage facility, knowing the access code to the secure area and carrying a copy of the rental agreement and a key to one of the padlocks. In addition to this evidence, Gregory Page testified that Montano-Gudino and Sandro Montano supplied methamphetamine for group recreational use every weekend or every other weekend for almost a year, and that Montano-Gudino gave Page one-sixteenth of an

ounce of methamphetamine on one occasion. This evidence, viewed in the light most favorable to the government, was ample to convict Montano-Gudino of conspiring to distribute methamphetamine.

## III. An Evidentiary Issue.

At trial, the government offered a tape recording of Miguel Hernandez's telephone threat to harm the children of witness Jesse Hastie if he cooperated with the government, a call made just four days after Montano-Gudino's arrest. The district court admitted the tape as a coconspirator's statement during the course of and in furtherance of the alleged conspiracies. See FED. R. EVID. 801(d)(2)(E). We review such evidentiary rulings for clear abuse of discretion. United States v. Beal, 279 F.3d 567, 571 (8th Cir.), cert. denied sub nom. United States v. Johnson, 122 S. Ct. 2642 (2002). The threat was relevant to show the conspirators' consciousness of guilt. See United States v. Garrison, 168 F.3d 1089, 1093 (8th Cir. 1999). The timing of the threat was some evidence of Montano-Gudino's participation. See Bourjaily v. United States, 483 U.S. 171, 180 (1987). While Hernandez's chilling threat may have been prejudicial, Rule 403 of the Federal Rules of Evidence is concerned with "unfair prejudice," that is, an "undue tendency to suggest decision on an improper basis." FED. R. EVID. 403 advisory committee's note. The district court did not abuse its substantial discretion by admitting this evidence.

## IV. The Jury Instruction Issue.

Citing the testimony of Jesse Hastie and Gregory Page and relying on United States v. Prieskorn, 658 F.2d 631, 636 (8th Cir. 1981), Montano-Gudino argues that the district court abused its discretion when it refused to give a requested jury instruction "that sale or gift of a small amount of a controlled substance between two individuals is not a conspiracy." But Prieskorn is distinguishable in many respects. First, in Prieskorn the defense was that defendant was a one-time *buyer* of drugs.

Montano-Gudino cites no case approving the instruction where the government's evidence, if believed, establishes that the defendant conspired with third parties to *sell* drugs to a single buyer. Second, <u>Prieskorn</u> applies when there is evidence that only a single, isolated sale of drugs occurred. <u>See</u> <u>United States v. Hester</u>, 140 F.3d 753, 757 (8th Cir. 1998). Here, there was evidence of multiple heroin and methamphetamine transactions. Third, <u>Prieskorn</u> does not apply to a defendant who received a large, distribution-quantity of drugs. <u>See</u> <u>United States v. Wiggins</u>, 104 F.3d 174, 177 (8th Cir. 1997). Here, Montano-Gudino emptied a storage unit that had contained twenty-two pounds of methamphetamine. Finally, the district court gave the jurors a "mere presence" instruction, which adequately explained any theory of the defense that was supported by the evidence. Thus, the court did not abuse its discretion by refusing to give the requested instruction.

## V. Sentencing Issues.

At sentencing, based upon the trial evidence, the district court found that Montano-Gudino's base offense level was 36, using the quantity of methamphetamine seized from the commercial storage unit as well as the heroin sold to Gregory Page. Over the government's objection, the court allowed Montano-Gudino a three-level downward adjustment based upon his more than minimal but less than minor role in the offense. <u>See</u> U.S.S.G. § 3B1.2. Finally, the court denied his requests for acceptance-of-responsibility and "safety valve" adjustments.

1. On appeal, Montano-Gudino first argues that the court clearly erred in including the methamphetamine seized from the commercial storage unit in its drug quantity calculation because that quantity was neither known to nor reasonably foreseeable to Montano-Gudino. But known or reasonably foreseeable is the standard for determining whether the sentencing court "may consider amounts from drug transactions <u>in which the defendant was not directly involved</u>." <u>United States v. Brown</u>, 148 F.3d 1003, 1008 (8th Cir. 1998) (emphasis added).

-6-

Here, the trial evidence established that Montano-Gudino was sent to empty a storage unit where the conspirators had hidden a large quantity of methamphetamine. He brought with him a copy of the rental agreement and a key to the padlocked unit. There was testimony that Montano-Gudino had significant relationships with other conspirators, including Miguel Hernandez, who had rented the storage unit. Thus, it was reasonable to infer that he knew he would be transporting a controlled substance. In these circumstances, he "is accountable for the controlled substance [he intended to transport] regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance." U.S.S.G. § 1B1.3, comment. (n. 2, illustration (a)(1)). The district court's drug quantity finding was not clearly erroneous. See United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996) (standard of review).

2. Montano-Gudino next argues that he is entitled to a four-level rather than a three-level downward adjustment for his role in the offense because he was only a "minimal participant" within the meaning of U.S.S.G. § 3B1.2(a). This issue was not preserved for appeal. After the court announced its drug quantity and role-in-the-offense findings, there was the following exchange:

> THE COURT: And you [defense counsel] object to my drug quantity finding but concur, I assume, in my role-reduction finding; is that right?
>
> MR. WRIGHT: That's correct, Judge.

3. Montano-Gudino next argues that the district court clearly erred in denying him a two-level acceptance-of-responsibility adjustment. See United States v. Carrasco, 271 F.3d 765, 768 (8th Cir. 2001) (standard of review). When a defendant contests essential elements of the crimes charged at trial, as did Montano-Gudino, it is only the rare case where his pretrial statements and conduct nonetheless demonstrate acceptance of responsibility. See U.S.S.G. § 3E1.1 comment. (n. 2). In

this case, Montano-Gudino contested the charges both before, during, and after the trial. He was not entitled to an acceptance-of-responsibility adjustment.

4. Finally, Montano-Gudino argues that the district court erred in denying him "safety valve" relief. The Guidelines safety-valve provision implements 18 U.S.C. § 3553(f)(5) by providing that a defendant may be sentenced "in accordance with the applicable guidelines without regard to any statutory minimum sentence" if the court finds he has met five statutory criteria. See U.S.S.G. § 5C1.2(a).

We have difficulty perceiving the relevance of this issue because Montano-Gudino's mandatory minimum sentence on the methamphetamine count was ten years, the mandatory minimum on the heroin count was five years, and the *bottom* of his guidelines sentencing range, which we have now affirmed, was 135 months, or more than eleven years. But in any event, Montano-Gudino relies upon a two-paragraph letter he provided the government just before sentencing. Like the district court, we conclude this letter did not come close to meeting his burden of showing that he "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5); see United States v. Rios, 171 F.3d 565, 567 (8th Cir. 1999) (defendant has burden of proof). Thus, he was not eligible for safety-valve relief.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.