# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1381

_____

United States of America

*Plaintiff - Appellee*

v.

Dwight Deron Cooke

*Defendant - Appellant*

_____

No. 16-1738

_____

United States of America

*Plaintiff - Appellee*

v.

Maria Elena Cantu, also known as Maria Cantu

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 14, 2016
Filed: April 5, 2017
_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.
_____

BEAM, Circuit Judge.

Dwight Cooke and Maria Elena Cantu were convicted of conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Their convictions arose out of the same investigation and their cases have been consolidated on appeal. They each challenge aspects of their pretrial detention, conviction, and sentencing, and we now affirm the district court.[1]

## I.    BACKGROUND

State and local law enforcement officers investigated a drug-trafficking ring in Davenport, Iowa, in November and December of 2014. The investigation involved several controlled buys and revealed a chain of distribution with Cantu at the top, supplying methamphetamine and other narcotics, and Cooke at the bottom, selling to users. State search warrants were issued in December 2014, authorizing searches of the residences of the ring members. On January 16, 2015, a federal complaint was filed before a federal magistrate judge charging Cooke, Cantu, and two others with conspiracy to distribute methamphetamine. The magistrate judge issued federal arrest warrants for the conspirators in that case, case 3:15-mj-6. Because Cooke's and Cantu's claims are distinct and pertain to their respective circumstances, we outline the facts of their cases separately.

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

### A.    Cooke

On January 23, 2015, Cooke called the Davenport Police Department and stated he would turn himself in at 7:30 p.m. that evening.  He then called his girlfriend and requested that he see his son because he was going to jail later that day.  When he met his girlfriend, his son was not with her.  The couple argued, and Cooke then assaulted his girlfriend with a scalpel, attempting to cut her throat.  He missed, instead cutting her from the corner of her mouth to her cheek.  He then stole her vehicle and fled, and failing to turn himself in that evening, remained at large.  On February 4, 2015, the Iowa District Court for Scott County issued an arrest warrant for Cooke for a charge of "Willful Injury - Causing Bodily Injury" for the assault on his girlfriend.  On February 18, 2015, a state bench warrant was issued for Cooke's having violated a protective order prohibiting him from contacting his girlfriend.  That same day, Cooke was arrested by Davenport police officers and U.S. Marshals.  The arresting state officer read all three warrants–the state arrest and bench warrants and the federal 3:15-mj-6 warrant–to Cooke.  Also on February 18, a federal grand jury in the Southern District of Iowa indicted Cooke, Cantu, and the other conspirators on federal conspiracy charges.  The indictment was filed in case 3:15-cr-15, and a federal arrest warrant for Cooke in that case was issued that day, but not executed.  Cooke was held in Scott County Jail, and the U.S. Marshals Service issued a writ of detainer against him.  On April 24, 2015, Cooke was transferred to federal custody, a U.S. Marshal executed the 3:15-cr-15 warrant, and Cooke appeared before a federal magistrate judge for the Southern District of Iowa.  Cooke filed a motion to dismiss, arguing that the amount of time between his February 18 arrest and his April 24 appearance violated both Federal Rule of Criminal Procedure 5(a)(1)(A) and the Sixth Amendment.  The district court dismissed the motion.

Cooke's trial date was initially set for June 8, 2015, but the district court continued trial to August 17, noting, "There is voluminous discovery and a failure to grant continuance will deny reasonable time necessary for adequate preparation for

trial even with the exercise of due diligence by the parties." Trial was continued again, over Cooke's objection, to August 24 due to the district court's trial schedule. On August 13, the district court granted another sixty-day continuance in order for Cooke's new counsel to prepare for trial, now set for October 26. On October 16, Cooke pled guilty to the federal conspiracy charge.

At the sentencing hearing, there was discussion about whether Cooke's assault on his girlfriend was relevant conduct. See U.S. Sentencing Guidelines Manual § 1B1.3 (hereinafter U.S.S.G. or Guidelines). At this time Cooke had been convicted in state court on charges arising from the assault on his girlfriend, but he had not yet been sentenced. Although the district court believed the assault was relevant, it granted the parties' request that it be treated as nonrelevant. As a consequence, Cooke was safety-valve eligible, but the assault added a point to his criminal history and his federal sentence would be eligible to run consecutively with the anticipated sentence on the state charges. U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(4), 5C1.2, 5G1.3(c). After establishing a criminal-history category of I and a Guidelines advisory range of 46 to 57 months, the district court departed upward to an advisory range of 57 to 71 months on the basis of an underrepresented criminal history. Id. § 4A1.3. The district court was concerned with two convictions too old to be counted in calculating Cooke's criminal-history category under Guidelines § 4A1.2(e)(1). The first was a conviction for assaulting his girlfriend and the mother of his children. Cooke used a twisted T-shirt to repeatedly choke her and punched her in the face. The presentence investigation report (PSIR) also noted that Cooke subsequently violated a no-contact order by visiting the woman's apartment. The second was a conviction for burglary, in which Cooke kicked in another woman's door, threatened to kill her, and fled from police officers. In addition, the district court was concerned with Cooke's conviction for the January 2015 assault described above. That conviction garnered only one point because Cooke had not yet been sentenced, id. § 4A1.2(a)(4), but the district court considered it a "horrific" incident and "by far the most serious offense." This, combined with the fact that officers had to tase Cooke during his

February 18, 2015, arrest, led the district court to conclude that a criminal-history category of III was more appropriate.

The district court then varied upward to 96 months on the basis of the 2015 assault. Although it had accepted the parties' suggestion to treat the 2015 assault as nonrelevant conduct for purposes of determining the applicable Guidelines range, it noted that it was "firmly convinced" that the assault was, in fact, relevant. The district court stated that "if it were relevant conduct, we would have had a very different calculation." It considered the assault for purposes of its analysis under 18 U.S.C. § 3553(a), stating the treatment of the assault under the Guidelines was "essentially [a] sentencing concession[] made by the government that I am allowed to consider in deciding a fair and appropriate sentence." It stated that although the State would be permitted to order a sentence on the assault charges to run consecutive to the federal sentence, the district court's experience with Iowa state and federal prosecutions led it to believe that Cooke would likely be paroled quickly to serve his federal sentence. It also noted the high quantity and purity of the drugs involved. The district court therefore varied upward to what it would have sentenced Cooke to if it had considered the 2015 assault relevant conduct, and it ordered that sentence to be served concurrently with the anticipated state sentence. Cooke appeals the district court's denial of his motion to dismiss and sentencing.

### B.    Cantu

Cantu was arrested on January 17, 2015, and made her initial appearance on the 20th. She was indicted on February 18, 2015, and trial was set for May 4. On Cantu's motion, the trial was continued to June 8, 2015. In its order the district court specified that "[t]he time of the delay shall constitute excludable time under the Speedy Trial Act." On May 14 and on defendants' motion, trial was again continued to August 17, the district court again specifying that the time of delay was excludable under the Speedy Trial Act. On July 1 the district court continued trial to August 24

due to its conflicting trial schedules. On August 13 and on motion by Cooke, unresisted by Cantu, the trial was continued again to October 26, and again the district court noted the delay was excludable for Speedy Trial Act purposes. Cantu's counsel moved to withdraw and so trial was continued to November 30, 2015, and again the district court specified the delay was excludable under the Speedy Trial Act. Cantu then notified the court she would be waiving her right to a jury trial, and a bench trial was scheduled for December 1, 2015. The record does not reflect that Cantu at any point asserted her rights under the Speedy Trial Act before the district court.

At trial, the government presented evidence of three controlled purchases of methamphetamine involving Cantu's niece, Rachel Gonzalez. Before two of these purchases, investigators observed Gonzalez park near Cantu's vehicle at a motel where Cantu and her husband were staying, briefly enter the motel, and emerge supplied with drugs she sold immediately afterward. Investigators also observed Gonzalez meet with someone resembling Cantu immediately after Gonzalez sold methamphetamine to Cooke. The government presented evidence from their search of Cantu's motel room, in which they found Cantu's purse on a night stand with approximately $11,000 cash in it. Of that amount, $2,500 was from marked bills used in controlled purchases of cocaine (accounting for $300) and methamphetamine (accounting for $2,200). In the drawer of the night stand, officers found approximately 220 grams of cocaine divided into one-ounce packages. Officers also found a digital scale that tested positive for cocaine residue. In addition, the government presented text-message communications between members of the conspiracy, which officers obtained when they seized and downloaded the contents of Cantu's and Gonzalez's cell phones. In an interview with investigators, Cantu claimed the $11,000 was from her husband's tattooing and tree-service businesses and that she did not know anything about the cocaine found in the motel room. On this evidence, the district court found Cantu guilty. Cantu challenges the admission of

certain evidence, the efficacy of her counsel, the sufficiency of the evidence, and she brings a Speedy Trial Act claim.

## II.   DISCUSSION

### A.   Cooke

Cooke appeals the district court's denial of his motion to dismiss and its upward departure and variance at sentencing.

#### 1.   Motion to Dismiss

We review the district court's denial of a motion to dismiss de novo. <u>United States v. Tankersley</u>, 374 F.3d 721, 722 (8th Cir. 2004). Cooke argued in his motion that the sixty-five day delay between his February 18 arrest and April 24 initial appearance violated Federal Rule of Criminal Procedure 5(a)(1)(A) and the Sixth Amendment.

#### a.   Federal Rule of Criminal Procedure 5

Rule 5(a)(1)(A) provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." "Rule 5(a) applies only to persons arrested and held under federal law." <u>United States v. Elliott</u>, 435 F.2d 1013, 1015 (8th Cir. 1970). Although Rule 5 does not apply where the defendant "has been arrested by local authorities and is in their sole custody," it may apply in the absence of a federal arrest "when there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them." <u>United States v. Jarrett</u>, 423 F.2d 966, 971 (8th Cir. 1970) (first passage quoting <u>Tucker v. United States</u>, 375 F.2d 363, 370 (8th Cir. 1967)); <u>see also</u> <u>United States v. Jeanetta</u>, 533 F.3d 651, 656 (8th

Cir. 2008) (noting Rule 5(a) applies to a person in local custody where "the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities" (quoting United States v. Morris, 445 F.2d 1233, 1236 (8th Cir. 1971))).

When Cooke was arrested on February 18, 2015, he was taken into state custody on state charges until he was transferred by writ to federal custody on April 24. The only arguable bases on which his arrest could trigger Rule 5(a), then, are (1) if the execution of the 3:15-mj-6 warrant at the time of Cooke's arrest rendered it a federal arrest; or (2) if the state and local officers were acting at the direction of or in order to assist federal authorities. Ultimately, however, we need not decide whether Rule 5(a) applies under these circumstances. The purpose of that rule is to "frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual." Jeanetta, 533 F.3d at 656 (quoting Morris, 445 F.2d at 1236). Accordingly, the appropriate remedy for a violation of Rule 5(a)(1)(A) is not dismissal of an indictment, but suppression of evidence illegally obtained as a result of the violation. See United States v. Chavez, 705 F.3d 381, 385-86 (8th Cir. 2013). Cooke points to no such evidence, arguing only that the period in state custody prejudiced him by delaying appointment of counsel, which deprived counsel of adequate time to prepare for trial. We have not been directed to any authority suggesting that this is a sort of prejudice addressed by Rule 5(a), and in any event Cooke's trial date was continued at his request for ten weeks to allow time to prepare in light of voluminous discovery, and later his new counsel was given a sixty-day continuance for time to prepare. Cooke was not prejudiced by the period of delay and so he has not identified any available remedy for a supposed violation of Rule 5.

## b.    Sixth Amendment Right to Speedy Trial

Cooke next argues the time between his indictment and trial violated his Sixth Amendment right to a speedy trial. The Sixth Amendment provides defendants with a right to a speedy trial that "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002). If the length of this period extends far enough as to be presumptively prejudicial, we then examine the reason for the delay, whether the defendant asserted the right, and any prejudice to the defendant. Id.

Cooke argues that the delay between his February 18 arrest and his initial appearance sixty-five days later prejudiced him for the same reason stated in his Rule 5 argument–lack of adequate time to prepare. But a defendant's constitutional right to a speedy trial concerns the length of time between the indictment or arrest and *trial*, not his initial appearance. Cooke's argument as to prejudice seems to be that the time before trial was *too* speedy because his counsel needed more time to prepare; but the constitutional right to a speedy trial is primarily concerned with an unduly *long* period and is meant "to minimize the possibility of lengthy incarceration prior to trial." United States v. MacDonald, 456 U.S. 1, 8 (1982).

Cooke was indicted on the conspiracy charge on February 18, and he pled guilty on October 16. A magistrate judge recommended the plea be accepted that day, and the district court accepted the report and recommendation on November 12. Thus the correct period for analysis under the Sixth Amendment is at most 267 days, a little shy of nine months.[2] "A delay approaching a year may meet the threshold for

_____

[2]The constitutional right to a speedy trial ceases upon conviction, Betterman v. Mont., 136 S. Ct. 1609, 1618 (2016), and a guilty plea is itself a conviction, United States v. Lincoln, 408 F.3d 522, 525 (8th Cir. 2005). We do not address, and give Cooke the benefit of, the question of whether a guilty plea accepted in a report and recommendation by a magistrate judge and later accepted by a district court operates

presumptively prejudicial delay . . . ." United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003). In Titlbach we held an eight-month delay was not presumptively prejudicial "[g]iven the complexity of the conspiracy and the length of trial." Id.; see also United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) (holding seven-month period between indictment and trial "too brief a delay to trigger review of his Sixth Amendment speedy trial claim"), abrogated by United States v. Knights, 534 U.S. 112 (2001). The instant case involved several coconspirator defendants, voluminous discovery, several requests from defendants for continuances, and motions for both Cooke's and Cantu's counsel to withdraw. Given this we do not consider the 267-day period presumptively prejudicial. Even if it were, the lion's share of the delay was due to Cooke's and his codefendants' own motions for continuance, and Cooke provides no citation to the record demonstrating that he asserted his speedy trial rights. The district court granted two of those continuances specifically to allow Cooke's counsel to deal with voluminous discovery, remedying the very prejudice he complains of. We therefore affirm the district court's denial of Cooke's motion to dismiss.

## 2. Sentencing

Cooke next challenges the reasonableness of the district court's upward departure and upward variance at sentencing. We review sentencing decisions for an abuse of discretion. United States v. Feemster, 572 F.3d 455, 461-62 (8th Cir. 2009) (en banc). We first ask whether the district court committed any significant procedural error, which includes the failure to adequately explain deviations from the applicable Guidelines range. Id. The district court abuses its discretion when it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of

as a conviction on the day it is given, recommended for acceptance by a magistrate judge, or accepted by the district court.

judgment in weighing the appropriate factors. <u>Id.</u> If the district court did not commit procedural error, we then review the substantive reasonableness of the sentence for an abuse of discretion, considering the totality of the circumstances and the extent of any deviation from the applicable Guidelines range. <u>Id.</u>

### a. Upward Departure

Cooke first objects to the district court's departure from an advisory Guidelines range of 46 to 57 months upward to a range of 57 to 71 months. Section 4A1.3 of the Guidelines permits a district court to rely on reliable information to conclude the defendant's criminal-history category underrepresents the seriousness of her criminal history and the likelihood of recidivism. The district court considered Cooke's pattern of violent conduct underlying his past arrests, his evasion and need to be subdued when arrested, and his pending state charges for assault and violation of a protective order. It stated, "Here I do believe that the criminal history category of I pretty dramatically underrepresents the serious nature of the defendant's prior record." After reciting Cooke's past conduct and emphasizing the brutal nature of his 2015 assault on his girlfriend, the district court concluded, "That is just not a category I offender. Category I offenders don't have criminal history or don't have any serious criminal history. This is in my view a criminal history that is most closely resembling that of a category III offender . . . ."

First, Cooke argues that his criminal history is not as violent as described by the district court. He points out that the charges and sentences were relatively unserious, netting in total nine days in county jail. Second, Cooke argues the district court did not sufficiently explain its reasoning for regarding Cooke's criminal history as more reflective of a category III history. Third, Cooke argues the district court erred when it said, "Category I offenders don't have criminal history or don't have any serious criminal history." Cooke argues that he is a category I offender because the Guidelines exclude convictions that are too dated.

-11-

Cooke does not dispute the factual bases for the prior convictions outlined in the PSIR or otherwise argue that they are not "reliable information." The district court was certainly within its discretion to consider those facts. See United States v. Thornberg, 326 F.3d 1023, 1026-27 (8th Cir. 2003). We do not think the district court's arguable mischaracterization of the criminal history of category I offenders amounts to a significant procedural error; its statement tended to show no more than that it considered Cooke's criminal history more serious than that typical of a category I offender. And although dated offenses are not counted for purposes of a criminal-history calculation, U.S.S.G. § 4A1.2(d), (e), the district court is allowed to consider such offenses for purposes of an upward departure under § 4A1.3(a)(2)(A). See United States v. Johnson, 648 F.3d 940, 943 (8th Cir. 2011).

We are also unpersuaded by Cooke's challenge to the adequacy of the district court's explanation for its upward departure from a category I to a category III criminal history. We require a district court in imposing an upward departure under Guidelines § 4A1.3(a) to proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history–including the prior convictions uncounted under the Guidelines the district court believes should be applied–with the histories of offenders in each higher category. Johnson, 648 F.3d at 943. While it is true that the district court's explanation for the upward departure does not address with much specificity why a category III criminal history is the appropriate level, we have previously upheld nonextensive explanations of upward departures so long as the district court "adequately explained [its] rationale for the sentence imposed." Id. at 944. Nor do we require the district court to mechanically provide an explanation for why each intermediate category is inapplicable. Id. at 943-44. We think the district court's focus on the seriousness of Cooke's criminal history and his propensity for violence that history exhibited adequately explained the district court's rationale and "provide[d] sufficient indicia of why the intermediary categories are inappropriate." Id. at 944 (quoting United States v. Azure, 536 F.3d 922, 932 (8th

-12-

Cir. 2008)).  We detect no procedural error in the district court's upward departure, nor do we think the extent of the departure was substantively unreasonable.

### b.      Upward Variance

Cooke next objects to the district court's upward variance, arguing that the district court did not identify specific § 3553(a) factors and that it gutted the parties' agreement on the relevance of the 2015 assault.  These arguments are without merit. In stating its reasons for the variance, the district court carefully recited Cooke's history, it had already discussed the nature of his offense, it discussed the need for the sentence to reflect what it considered to be relevant conduct, and it made clear it was aware of the § 3553(a) factors.  A district court "need not 'categorically rehearse each of the [§] 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered.'" United States v. Townsend, 617 F.3d 991, 994 (8th Cir. 2010) (alteration in original) (quoting United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006)).  Furthermore, the parties' "agreement" to consider the 2015 assault nonrelevant was not a plea agreement accepted by the district court, see Fed. R. Crim. P. 11(c)(1)(C), and the district court was under no obligation to disregard what it perceived as relevant conduct.  See 18 U.S.C. § 3661.  We therefore detect no abuse of discretion and affirm the district court's sentence.

### B.      Cantu

Cantu argues:  (1) the district court erred in admitting into evidence her text messages and those of her coconspirators; (2) her rights under the Speedy Trial Act were violated; (3) the assistance of her counsel was ineffective; and (3) the evidence was insufficient to convict her.

Cantu challenges the admission of her and Gonzalez's text messages in evidence, arguing that they are hearsay, that they violate her rights under the

-13-

Confrontation Clause, and that they were obtained pursuant to overbroad warrants. But despite having requested discovery from the government and having notice in the government's trial brief that the text messages would be used against Cantu, she did not move in limine for their suppression. The basis for such a motion was reasonably available to her before trial, and she has not shown good cause for her failure to move to suppress the text messages at that time. Consequently, Cantu has waived her right to even plain error review of the admission of that evidence. Fed. R. Crim. P. 12(b)(3)(C), (c)(3); United States v. Harken, 641 F. App'x 638, 639-40 (8th Cir. 2016); see also United States v. Herron, 275 F. App'x 574, 575 (8th Cir. 2008) ("Because Herron did not file a motion to suppress in the district court, we are 'not in a position to intelligently and responsibly' conduct plain error review of the matter." (quoting United States v. Wenner, 417 F.2d 979, 981-82 (8th Cir. 1969))).

Cantu next argues that her Speedy Trial Act rights were violated because she was not brought to trial within the prescribed time. See 18 U.S.C. § 3161(c)(1). But Cantu never moved the district court for dismissal prior to trial, and so she has waived her right to the remedy provided by that statute. Id. § 3162(a)(2); United States v. Williams, 605 F.3d 556, 572-73 (8th Cir. 2010).

Cantu also argues her trial counsel was ineffective for failing to object to the admission of the text messages, for failing to assert her rights under the Speedy Trial Act, and for failing to call any witnesses favorable to Cantu. Because a claim on direct appeal of ineffective assistance of counsel usually requires further development of the record, we generally defer such claims to collateral review under 28 U.S.C. § 2255, excepting cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice. United States v. McAdory, 501 F.3d 868, 872-73 (8th Cir. 2007). Although Cantu did raise an ineffective assistance of counsel claim before the district court, the deficiencies in her counsel's representation alleged below were different from those raised here, and so the record is undeveloped for purposes of this appeal. Further, we are not persuaded that the interests of justice

-14-

compel us to deviate from our normal approach. Therefore, we decline to address Cantu's ineffective assistance of counsel claim, without prejudice to her raising it in a later proceeding.

Finally, Cantu argues the evidence was insufficient to support her conviction because it did not prove that Cantu had knowledge of the conspiracy. On appeal from a bench trial, "[w]e review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Acosta, 619 F.3d 956, 960 (8th Cir. 2010) (quoting United States v. Scofield, 433 F.3d 580, 584-85 (8th Cir. 2006)). "To convict a defendant of conspiracy to distribute drugs, the government must prove that there was an agreement to distribute drugs, that the defendant knew of the agreement, and that the defendant intentionally joined the agreement. United States v. Chavez-Alvarez, 594 F.3d 1062, 1066 (8th Cir. 2010). These elements may be proved by direct or circumstantial evidence. Id. at 1067. Here, text messages between Cantu and Gonzalez reference the selling of "ICE," slang for methamphetamine, identify an individual by the name "main," (referencing a coconspirator's street name, "Mane"), and discuss Gonzalez's payment to Cantu of money for, in the expert opinion of an investigator, the "fronting" of controlled substances. Gonzalez, who was observed engaging in several drug sales, was spotted near Cantu's motel room shortly before two sales, and possibly seen speaking to her shortly after another. Upon a search of the motel in which Cantu was staying, marked bills from controlled purchases were discovered in Cantu's purse, inches from cocaine packaged into one-ounce units and near a scale containing cocaine residue. On this evidence, and in light of the deference afforded a district court's verdict after a bench trial, we affirm Cantu's conviction.

-15-

## III.	CONCLUSION

For the foregoing reasons, we affirm.

_____