# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2286
_____

United States of America

*Plaintiff - Appellee*

v.

Muzammil Ali

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: May 13, 2022
Filed: August 30, 2022

_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.

_____

SMITH, Chief Judge.

After a three-day trial, a jury convicted Muzammil Ali of conspiracy to distribute tetrahydrocannabinol (THC), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Ali appeals, arguing that the district court[1] (1) abused its

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

discretion by denying his motion for a continuance; (2) erred by admitting into evidence portions of recordings of phone calls that Ali made from jail; (3) permitted trial delays that violated Ali's Sixth Amendment right to a speedy trial; and (4) erred at sentencing by declining to vary downward. We affirm.

## I. *Background*
### A. *Indictment and Continuances*

On November 14, 2019, Muzammil Ali and five associates were indicted for conspiracy to distribute THC. Joshua Hendrickson, the leader of the conspiracy, bought vape pens from Hong Kong, THC from California and Nevada, and flavoring from California; he had all of these materials shipped to his co-conspirators' residences in Des Moines, Iowa, for assembly and distribution in the area. Ali, for his part, received shipments and helped to assemble the components into the final product, THC-filled vape pens, at his residence.

In late 2019, several of Ali's co-conspirators were arrested. The district court set their trial for July 13, 2020. Ali was arrested on February 18, 2020. At his arraignment the following day, Ali, though aware of his rights, made no objection to his trial date being the same as his co-defendants. A July 13, 2020 trial would trespass the April 29 deadline under the Speedy Trial Act. The exchange was as follows:

> THE COURT: . . . . [B]y our calculation, the Speedy Trial Act deadline is April 29, but the co-defendants are set for trial for July 13.
>
> So [does Ali have] any objection to going ahead and using the July 13 trial date?
>
> [Ali's Counsel]: I'm sorry?
>
> THE COURT: Is there any objection to going ahead to use the July 13 trial date?

[Ali's Counsel]: No, Your Honor.

R. Doc. 318, at 4.

In May 2020, co-defendant Hendrickson moved to continue the trial date until September. Ali initially objected to the continuance, but he later withdrew his objection and joined Hendrickson's motion along with several other co-defendants. The district court granted the motion, "find[ing] that the ends of justice served by a continuance outweigh the best interest of the public and Defendants in a speedy trial." R. Doc. 165, at 1. Trial was rescheduled for September 14, 2020.

In late July 2020, Ali moved pro se for his counsel to be replaced. The court granted his request. A new attorney was appointed on August 4. The next day, Ali's new counsel was provided with all discovery material produced to date. Ali thereafter moved for a continuance, stating that "the ends of justice served by granting this continuance outweigh the best interest of the public and the defendant in a speedy trial." R. Doc. 272, at 1. He further acknowledged that the time between the motion and the new trial date would be excluded from Speedy Trial Act calculations. *See* 18 U.S.C. § 3161. The court concurred and reset trial for October 19, 2020.

In late September 2020, Ali alleged that his speedy trial rights were being violated and moved to dismiss the charge against him. The district court rejected Ali's motion because (1) "Ali [had] consented to the trial continuances," (2) "the ends of justice served by the continuances outweighed the best interest of the public[] and . . . [of] Ali in a speedy trial," and (3) the court's issuance of a series of Public Administrative Orders had postponed all jury trials until October 12, 2020, due to the COVID-19 pandemic, "exclud[ing] the intervening time from consideration [in] Speedy Trial Act calculations." R. Doc. 319, at 1–2.

In early October, the government requested that Ali's trial be continued for two months. In support of its motion, the government cited, among other things, the following: (1) that the only co-conspirator who had not yet pleaded guilty had recently become a fugitive, (2) the preference for co-conspirators to be tried jointly, (3) the ongoing COVID-19 pandemic, and (4) the fact that a continuance would not violate the Speedy Trial Act. Ali resisted the motion, indicating that he "wishe[d] to proceed to trial." R. Doc. 359, at 1. The court denied the government's motion. However, due to scheduling issues, the court pushed trial back three days, to October 22, 2020.

A few weeks later, the government reasserted its motion, asking for permission to call a witness via two-way video or, in the alternative, for a continuance. In addition to the reasons set forth in its initial motion, the government disclosed that an essential witness was unavailable to appear in-person at trial due to personal circumstances related to the COVID-19 pandemic.[2] The court granted the continuance "[f]or the reasons stated in the [g]overnment's motion" and set trial for January 11, 2021. *Id.* at 1.

Five days before trial, on January 6, 2021, Ali sought a continuance until "a time when C[OVID-19] vaccinations ha[d] been administered." R. Doc. 457, at 2. Ali argued that restrictions at the jail where he was detained rendered him "unable to meet with his attorney in person on an unlimited basis to review discovery and prepare for trial." *Id.* at 1. In a pro se letter to the court, Ali added that neither he nor his attorney was prepared for trial and that he needed additional time "to go over the

---

[2]The court's order noted that the witness's "personal circumstances [we]re extraordinary and compelling reasons supporting the [c]ourt's finding that she [wa]s unavailable for trial under 18 U.S.C. § 3161(h)(3)(B)." R. Doc. 378, at 1–2. The court noted moreover that the unavailability of an essential witness meant that "the time between the motion and new trial date [would be] excluded from Speedy Trial Act calculations." *Id.* at 1.

discovery with [his attorney] face to face." R. Doc. 460, at 1. A hearing was held the next day. There, Ali's attorney represented that he was prepared for trial and that he was "familiar with all the evidence" but that Ali did not "believe [they were] prepared for trial" because Ali had only recently shifted his focus from challenging his pre-trial detention to trial matters. R. Doc. 573, at 6, 33.

The district court rejected Ali's request for a continuance, noting Ali's repeated "insistence in October [2020] that any continuance would be a violation of his rights and that he needed to go to trial in October despite pandemic circumstances." *Id.* at 6. In the interim, said the court, the only change had been "a constriction of evidence . . . to be presented at trial." *Id.* at 5. And the restrictions on in-person communication at the jail where Ali was incarcerated did not result in a due process violation or call for a continuance, because Ali "ha[d] had adequate time to prepare for trial." *Id.* at 25.

The court did not ignore Ali's concerns about time for trial preparation. The court scheduled the hearing early in the morning so that Ali and his attorney would have the remainder of the day to work together at the courthouse where they would not be subject to the jail's COVID-19 restrictions. The court arranged for a private room in which Ali and his attorney would be able to review discovery materials. The court also permitted Ali and his attorney several hours the following day to work together at the courthouse. Ali's attorney stated to the court that he appreciated the court "going way over the top to try to help us here," and Ali acknowledged that the court's efforts had "addressed [his] concerns." *Id.* at 28, 29.

## B. *Jail Calls*

In the two days before trial, Ali placed multiple telephone calls to his former girlfriend, Samantha Kendall, from his jail cell. Kendall lived with Ali during the time when his co-conspirators used his residence as home base for their drug operation. The government also called Kendall as a witness for the government at Ali's trial. Kendall answered only the first two calls she received from Ali.

During his two recorded conversations with Kendall, Ali made several statements that the government sought to introduce at trial. The government believed the calls were attempts to influence her testimony or to persuade her not to testify at all. In the first call, for example, Ali said:

> [Y]ou want to help these people [the government], and you don't know what the f*ck they're going to do to you? . . . [Y]ou know what the f*ck's going to happen? They don't give a f*ck about you or anybody else. You're going to testify? That's fine, do what you have to do. But you do have to be careful. They will turn around and charge you too. This is the federal government. You know the government doesn't give a f*ck.

R. Doc. 577, at 33 (second, third, fourth, sixth, seventh, and eighth alterations in original). Ali said similar things in the second call. Specifically, Ali told Kendall that she "made a big mistake all last year" and was "still making mistakes" by cooperating with the government. *Id*. When she told him that she was not concerned about being charged with a crime, he claimed that she was culpable in the criminal activity that occurred at their residence.

At trial, the government offered into evidence two exhibits which contained excerpts of the two recorded calls. The first exhibit contained nearly 9 minutes of the first call, which was around 13 minutes in total, and the second contained 3 minutes of the 20-minute second call.

Ali objected to the exhibits, arguing that the risk of unfair prejudice substantially outweighed their probative value. Ali asked, in the alternative, that, if the court admitted the exhibits, it would admit them in their entirety. The district court overruled Ali's objection. The court reasoned that portions of the calls were "relevant to [Ali's] attempt to influence [Kendall's] testimony," to "intimidate" her, and to persuade her "to not testify about his involvement in this case." R. Doc. 555,

at 46. In addition, the court viewed such evidence as showing Ali's "consciousness of [his own] guilt." *Id.* at 8.

To protect against unfair prejudice, the court also instructed the government to excise certain statements, such as those concerning Ali's potential punishment and terms of plea negotiations. The court rejected Ali's request that the entirety of the calls be played. The court considered that most of the additional statements in the recordings either constituted inadmissible hearsay or were irrelevant, unfairly prejudicial, or potentially confusing to the jury. Before playing the recordings, the court advised the jury that segments of the recorded calls had been "omitted because the [c]ourt found that those portions were not relevant." *Id.* at 79.

After a three-day trial, the jury convicted Ali of conspiracy to distribute THC. The presentence report (PSR) attributed 46,167 grams of THC to Ali. THC is not listed in the Sentencing Guidelines; however, it is referenced in the drug-equivalency tables, where each gram of THC equates to 167 grams of "converted drug weight." U.S.S.G. § 2D1.1, cmt. n.8(D). The district court, based on the parties' submissions and the PSR's findings, adopted the PSR recommendation that Ali was responsible for 46,167 grams of THC, which, based upon the drug-equivalency tables, comes to 7,709 kilograms in converted drug weight. This calculation put Ali's base offense level at 32. *See id.* § 2D1.1(c)(4).

At sentencing, the court imposed two upward variances—one for "maintain[ing] a premises for the purpose of . . . distributing a controlled substance" pursuant to U.S.S.G. § 2D1.1(b)(12) and one for obstruction of justice in regard to Ali's jail calls to Kendall—for a total offense level of 36. As the statutory maximum sentence was 20 years, Ali's offense level, combined with a criminal history category of III, established his advisory Guidelines range at 235 to 240 months' imprisonment. The court sentenced Ali to 235 months' imprisonment.

## II. *Discussion*
### A. *Denial of Continuance*

"We review the denial of a motion for continuance for abuse of discretion, considering 'the amount of time granted for preparation, the conduct of counsel at trial, and whether prejudice appears from the record.'" *United States v. Shafer*, 608 F.3d 1056, 1066 (8th Cir. 2010) (quoting *United States v. Parker*, 587 F.3d 871, 879 (8th Cir. 2009)).

Ali argues that COVID-19 restrictions made preparation for trial difficult for him. For instance, he had to confer with his attorney remotely by video conference or at the jail on opposite sides of a plexiglass divider. Ali contends that "[w]hile this did not make it impossible for [him] to prepare for trial, it did make it much more time consuming." Appellant's Br. at 12. Because of these challenges, Ali argues, the district court abused its discretion in denying his continuance, causing him to be prejudiced by lack of time to prepare his defense.

Ali has not established that the court abused its discretion. The trial occurred nearly a year after Ali's arrest and arraignment. Ali replaced his attorney in August of 2020, but he still had more than five months to prepare for trial with his trial counsel's assistance. Five months falls within a range found in cases where we concluded that there was adequate time. In *United States v. Bradshaw*, we held seven months to be sufficient time for a defendant to prepare for trial. 955 F.3d 699, 704 (8th Cir. 2020). Similarly, in *United States v. Kelley*, we concluded that there was adequate time when a pro se defendant "had three months to prepare for trial with the assistance of standby counsel." 477 F. App'x 401, 402 (8th Cir. 2012) (unpublished per curiam).

Both Ali's attorney and Ali himself acknowledged that they were ready for trial. Ali told the court in October 2020 that he wanted trial to be held that month. "In light of [Ali's] own request[] for an expeditious disposition, it was not an abuse of

discretion for the district court to deny further continuances." *United States v. Jolivet*, 224 F.3d 902, 906 (8th Cir. 2000). Ali's attorney told the court at the continuance motion hearing that he was "familiar with all the evidence" and prepared for trial. R. Doc. 573, at 33. "In the face of the unequivocal and uncontradicted statement by a responsible officer of the court that [Ali] was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance." *Morris v. Slappy*, 461 U.S. 1, 12 (1983).

Moreover, "the last-minute nature of [Ali's] motion . . . undermine[d] the [district] court's interest in the orderly administration of justice." *Bradshaw*, 955 F.3d at 704. It was therefore appropriate for the court, presented with a continuance motion days before trial, to proceed with its scheduled trial plans. *See Morris*, 461 U.S. at 11–12. Finally, Ali does not point to any instances where lack of preparation harmed his attorney's trial performance. *See Shafer*, 608 F.3d at 1066 (factors for consideration in appellate review).

We find no abuse of discretion.

### B. *Trial Delays*

With respect to Ali's claimed violation of his Sixth Amendment right to a speedy trial, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Johnson*, 990 F.3d 661, 666 (8th Cir. 2021).[3] To decide whether this right has been violated, we consider "[(1) the] [l]ength of delay, [(2)] the reason for the delay, [(3)] the defendant's assertion of his right, and [(4)] prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also*

---

[3]Ali does not argue on appeal that the Speedy Trial Act was violated. *See* 18 U.S.C. § 3161(h)(3), (7). "It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003).

*Johnson*, 990 F.3d at 670. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). "Where no presumptively prejudicial delay existed, we need not examine the remaining three factors under *Barker*." *Titlbach*, 339 F.3d at 699.

Ali claims that the delays in scheduling his trial amount to violations of his right to a speedy trial under the Sixth Amendment. On these facts, we conclude that Ali's speedy trial right was not violated.

Fourteen months elapsed after Ali's indictment before his trial. Normally, this would be sufficient delay to give rise to a presumption of prejudice. *See, e.g.*, *id.* ("A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors"). But the delays in this case are not attributable to the government as they resulted from delays requested by his co-defendants or ordered by the court in which he acquiesced. This means that the relevant period is between October 19, 2020, and January 11, 2021, the date Ali's trial began. This period of delay does not trigger presumptive prejudice. *United States v. Cooke*, 853 F.3d 464, 472 (8th Cir. 2017) (holding 267-day period was not presumptively prejudicial considering complexity of case and multiple requests for continuances and withdrawal of counsel); *Titlbach*, 339 F.3d at 699 (holding 8-month delay was not presumptively prejudicial "[g]iven the complexity of the conspiracy and the length of trial"). Because Ali's claim fails the first *Barker* factor, we need proceed no further. *See id*.

C. *Admission of Jail Call Excerpts into Evidence*

We review a trial court's evidentiary rulings for abuse of discretion. *United States v. Bradley*, 924 F.3d 476, 483 (8th Cir. 2019).

Ali contends that the district court abused its discretion in admitting portions of jail phone calls between Ali and his former girlfriend, arguing that "their probative value was far outweighed by their prejudicial nature" in violation of Federal Rule of Evidence 403. Appellant's Br. at 14.

The district court's decision to permit the introduction of the call excerpts was not an abuse of discretion. The court found Ali's statements to Kendall relevant as attempts to intimidate Kendall and thus influence her testimony as well as probative of his consciousness of guilt.

"[T]his court has consistently held that evidence of threats against witnesses are generally admissible, even if prejudicial." *United States v. Skarda*, 845 F.3d 370, 378 (8th Cir. 2016). For example, in *United States v. Montano-Gudino*, we upheld the trial court's admission of a tape recording of a co-conspirator's phone call threatening to harm the children of a witness under Federal Rule of Evidence 801(d)(2)(E) (statement of co-conspirator in furtherance of the conspiracy is not hearsay), observing that the call "was relevant to show the conspirators' consciousness of guilt" and evidence of the defendant's participation in the conspiracy. 309 F.3d 501, 505 (8th Cir. 2002). We observed that while such a "chilling threat may have been prejudicial," it was not unfairly or unduly so. *Id.* (citing Fed. R. Evid. 403). Similarly, Ali's statements to Kendall evince a clear intent to dissuade her from testifying against him. The district court was within its discretion to admit this evidence to show Ali's consciousness of guilt. *See Skarda*, 845 F.3d at 378; *Montano-Gudino*, 309 F.3d at 505.

Ali further argues that, assuming the court did not abuse its discretion in admitting the excerpts, the recordings should have been admitted in their entirety:

> Had the full recordings been played, the jury would have had the opportunity to examine the context in which Ali's statements were

made, and could have reasonably concluded that the "threats" were instead intended to be warnings that the [g]overnment could still prosecute Kendall for her role in the conspiracy.

Appellant's Br. at 15.

Federal Rule of Evidence 106 provides:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

Fed. R. Evid. 106. Rule 106 "operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (internal quotation marks omitted).

While in some cases Rule 106 may require that all or portions of a series of recorded conversations be played to avoid misleading the jury, the party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted. In addition, the district court has broad discretion to conduct the trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness reflected in Rule 106.

*United States v. King*, 351 F.3d 859, 866 (8th Cir. 2003) (cleaned up). Moreover, the Rule "does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception." *Ramos-Caraballo*, 375 F.3d at 803 (cleaned up).

In denying Ali's Rule 106 request, the court found that the remainder of the recordings contained statements that were hearsay, unfairly prejudicial, irrelevant, or potentially confusing. *See id.*; *King*, 351 F.3d at 866. In so doing, it exercised its "broad discretion . . . to choose among reasonable evidentiary alternatives to satisfy the rule of completeness." *United States v. Mohamed*, 727 F.3d 832, 837 (8th Cir. 2013) (internal quotation marks omitted).

In his reply brief, Ali argues that the "edited portions [of the recordings] eliminated friendly conversation about the welfare of Ali and Ms. Kendall's child, something not consistent with making threats to Kendall." Appellant's Reply Br. at 5. Of course, the government also edited out portions in which Ali referred to his prior abuse of Kendall. R. Doc. 555, at 6 ("From 4 minutes to 4 minutes and 5 seconds, we have muted the clip because the defendant talks about his abuse of Ms. Kendall."). Admitting the recordings in their entirety would mean that the jury would have heard such prejudicial material. If the discussion of their son "qualifies or explains" Ali's apparent threats, then the admission of statements about his violent behavior toward Kendall would certainly do so as well. *King*, 351 F.3d at 866. Ali has not met his burden to show either the relevance or the explanatory value of such statements. *Id.* ("[T]he party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." (internal quotation marks omitted)). To the extent that the continued conversation added context to Ali's admitted statements, it was within the court's "substantial evidentiary discretion" to exclude the remainder of the conversation. *United States v. Cross*, 888 F.3d 985, 990 (8th Cir. 2018). We find no abuse of discretion.

### D. *Failure to Vary Downward*

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Anwar*, 880 F.3d 958, 971 (8th Cir. 2018).

-13-

Ali argues that the district court erred by failing to vary downward from the advisory Guidelines range based on a policy disagreement with the Guidelines' 1:167 drug-weight ratio for THC. Ali does not contest the court's calculation of his drug quantity based on the 1:167 ratio, and he admits that the court did not clearly err "in applying the 1:167 ratio." Appellant's Br. at 18 (citing *United States v. Ramos*, 814 F.3d 910, 920 (8th Cir. 2016)). He argues instead that the Guidelines are advisory, not mandatory, and that, since THC is not listed in the Guidelines, the court erred by failing to exercise its discretion to vary downward.

Ali's argument relies on *Kimbrough v. United States*, 552 U.S. 85 (2007), and its progeny. In *Kimbrough*, the United States Supreme Court held that district courts may grant downward variances from the Guidelines range based on a disagreement with the sentencing disparity between crack and powder cocaine. *Id.* at 108–10.

Ali's reliance on *Kimbrough* is misplaced. The language of *Kimbrough* imparts permissive authority to courts to grant downward variances. *See United States v. Sharkey*, 895 F.3d 1077, 1082 (8th Cir. 2018). It does not require them to do so. The district court chose not to do so. As this decision was within the court's reasonable exercise of discretion, Ali's claim of error fails.

III. *Conclusion*

Accordingly, we affirm the district court.

_____

-14-